THE STATE OF KANSAS v. ROBERT CALHOUN.

1. CRIMINAL CASE — *Pleading Guilty through Fear of a Mob — Writ of Error Coram Nobis.* Where the accused in a criminal prosecution in the district court is forced through well-grounded fears of mob violence to plead guilty to the criminal charge, and to be sentenced to imprisonment and hard labor in the penitentiary for a term of years, he has a right to relief from such sentence and plea by an action or proceeding in the same court in the nature of a writ of error *coram nobis.*

2. LIMITATION OF ACTION — *No Bar.* And in such a case, where the accused was sentenced to imprisonment in the penitentiary for a period of 42 years, and after having served more than seven years of that term, he commences an action in the nature of a writ of error *coram nobis* to set aside such sentence and plea, his action is not barred by any statute of limitations, for the reason that no statute of limitations will operate against the remedy of a party while he is under the legal disability of imprisonment.

3. ATTORNEY AND CLIENT — *Confidential Conversation, not Admitted in Evidence.* In such a case, where a deposition of the accused was read in evidence on the trial in his action for relief, and in such deposition was a statement made by him that the relation of attorney and client had never existed between himself and K., but the oral testimony of K., introduced on the trial, showed that such relation did once exist, and that a certain conversation had between them, more than seven years prior to that time and while that relation existed, was a confidential conversation had between them as attorney and client, and the state offered to show what that conversation was, but the accused, through his counsel in the action for relief, objected, and the court excluded the evidence, *held,* that the supreme court cannot say that any error was committed.

4. MOB VIOLENCE—*Threats—Evidence for Jury.*   In such a case, where the trial court permitted the accused to show threats of mob violence, made both before and after, but on the same day of the entering of his plea of guilty, and many of which threats were not communicated to the accused before his plea was entered, *held,* not error; that the evidence tended to show that there was a real danger from mob violence, and that the fears of the accused were well founded, and that the evidence was proper to go to the jury.

5. INNOCENCE—*Burden of Proof, not Shifted.*   And further *held,* that the question of the guilt or innocence of the accused in such a case is not a necessary question to be determined in the case; that a mob cannot, by compelling a person accused of a crime to plead guilty and to be sentenced to imprisonment and hard labor in the penitentiary, so shift the burden of proof from the state to the accused as to compel the accused to prove his innocence, and to prove it by a preponderance of the testimony, and to relieve the state from proving his guilt, and from proving it by evidence sufficient to remove every reasonable doubt.   The accused has the right to be placed back in the same condition as he was before he entered his plea of guilty.

6. INSTRUCTIONS—*No Error.*   And it is further *held,* that no error was committed in refusing instructions.

*Error from Marion District Court.*

ALL of the material facts are stated in the opinion, filed January 7, 1893.

*W. H. Carpenter,* for plaintiff in error:

The court below erred in overruling the objection made by plaintiff in error to the swearing of the jury, for the reason that the court below had no jurisdiction to try the case.

As the trial of the case, in the event plaintiff below succeeded, meant that the judgment of the court in two cases would be vacated and set aside, it cannot be contended that the court below had any right to vacate, modify or set aside the judgments complained of, except as it proceeded according to either the code of civil or criminal procedure.

The trial court erred in overruling the objection made by the plaintiff in error to the introduction of evidence, for the reason that the assignment of errors did not state facts sufficient to constitute a cause of action against the defendant.

If the claim of the defendant in error is true, then the judgments of the court, of which he complains, were a fraud, and his pleas of guilty, upon which these judgments were based, were obtained by fraud; therefore, the action commenced by defendant in error was an action for relief on the ground of fraud, and was barred by the statute of limitations.

The trial court erred in sustaining the objection made by defendant in error to certain questions asked by plaintiff in error of the witness Keller on cross-examination. This objection was sustained on the ground that the questions called for an answer that would disclose a privileged communication made by a client to his attorney.

The trial court permitted the defendant in error, over the objection of the plaintiff in error, to prove by several witnesses that threats were made against the life of defendant in error, and which were not communicated to the defendant in error. Plaintiff in error contends that the court below erred in admitting this kind of testimony, for the reason that it could not have made any difference to the defendant in error what the real temper of the community was when he made his plea of guilty, as long as he did not know what it was; and it cannot be said that he was influenced in making his confession of guilt by a condition of affairs that he knew nothing about, or that he was frightened by threats of mob violence of which he never had the least intimation.

The court below allowed the defendant in error to prove what was said and done by the members of the supposed mob, long after defendant in error had pleaded guilty and had been sentenced, over the objections of plaintiff in error. This was error, and was such an error as materially injured the plaintiff in error.

The trial court erred in instructing the jury that they had no right to consider the question of the guilt or innocence of the defendant in error, and that it did not make any difference how guilty the defendant was.

The trial court erred in refusing to charge the jury as requested by plaintiff in error in its third and last request. If

the defendant in error was actually guilty, and desired to enter his pleas of guilty irrespective of any fear of mob violence, certainly the fact that there was danger of his being injured would not permit him to say that that was the reason he entered such a plea.

*Frank Doster*, for defendant in error:

An accused who pleads guilty to a criminal charge, under duress for fear of mob violence, and who is sentenced to prison upon such plea, may, after the term at which sentenced, upon proceeding in error *coram nobis*, have such sentence revoked, the plea of guilty set aside, and a trial upon such charge. *Sanders v. The State*, 85 Ind. 318; *Adler v. The State*, 35 Ark. 517; *In re Mallison*, 36 Kas. 729. This proceeding, by implication from all the authorities and under the definitions of our statute, is a civil action, although brought to vacate a criminal sentence. Civil Code, §§ 7, 8.

Writs of error *coram nobis* were prosecuted at common law, not to review errors of law apparent upon the record, but to bring to view some matter *dehors* the record, which, upon being made to appear, justified the entry of a different judgment. *Sanders v. The State*, supra; *Adler v. The State*, supra. Jurisdiction to issue writs *coram nobis* is in the district court, (see authorities last cited,) and because the supreme court has only such "appellate jurisdiction as may be provided by law." Const., art. 3, § 3; Gen. Stat., ch. 27, § 1. And such supreme jurisdiction is to be exercised "in such manner as may be provided by law." Gen. Stat., ch. 27, § 1; Civil Code, § 727. The manner provided by law in civil cases is by petition and summons in error, (Civil Code, § 544,) with transcript of record, (Civil Code, § 546,) or case-made, (Civil Code, § 547.) The manner provided by law in criminal cases is appeal, (Crim. Code, art. 14,) with bill of exceptions, (Crim. Code, § 219.) Such jurisdiction can be exercised in no other manner than by such petition in error or appeal. *Cohen v. Trowbridge*, 6 Kas. 385.

While district courts have only "such jurisdiction as may

be provided by law," (Const., art. 3, § 6,) yet the law vests them with "general original jurisdiction of all matters, both civil and criminal, not otherwise provided by law." Gen. Stat., ch. 28, § 1.

*Habeas corpus* will not lie because the process under which the confinement is had was issued on the final judgment of a court of competent jurisdiction. Civil Code, § 671; *Ex parte Nye*, 8 Kas. 99. None of the statutory remedies are available. *The State v. Sanders*, supra. The common law provided for writs *coram nobis*, and the "common law as modified, etc., remains in force in aid of the general statutes." Gen. Stat., ch. 119, § 3.

The common-law writ of error *coram nobis* may, under the express provisions of our statute, be sued out.

"If a case ever arise in which an action or proceeding for the enforcement or protection of a right or the redress or pre-vention of a wrong cannot be had under this code, the prac-tice heretofore in use may be adopted, so far as may be necessary to prevent a failure of justice." Civil Code, § 727. By "practice heretofore in use," is meant the common-law practice, because the section quoted has been carried through-out the history of the code. Civil Code of 1859, § 614; Laws of 1858, § 603, p. 167. The issue of fact involved in a pro-ceeding *coram nobis* is to be tried by a jury. *Tyler v. Morris*, 34 Am. Dec. 385; *Adler v. The State*, supra.

The statute of limitations does not run against the right claimed in a proceeding *coram nobis*. *Powell v. Gott*, 53 Am. Dec. 153; *Latshaw v. McNees*, 50 Mo. 381. And it does not run against the right of a person under disability. Gen. Stat., ch. 31, § 434; Civil Code, § 19; Angell, Lim. (6th ed.), § 195; *Moore v. Armstrong*, 36 Am. Dec. (note) 72.

The rules of practice in the prosecution of writs of error *coram nobis* are outlined in *Holford v. Alexander*, 46 Am. Dec. (note) 260; *Adler v. The State*, supra.

A convict is a competent witness for himself. 1 Greenl. Ev., § 374.

The opinion of the court was delivered by

VALENTINE, J.: At the February term of the district court of Marion county, in 1885, the grand jury found two indictments against Robert Calhoun for defiling females under the age of 18 years, committed to his care and protection, by carnally knowing them. The fact of such indictments having been found became known in the community. The public mind became greatly excited and hostile to the accused. Threats of lynching him were freely made, and preparations to carry out the same were apparently going on. Knowledge of these threats and preparations was communicated to the accused, who was then in jail, and the same produced in his mind such a state of fear, that, to appease the passions of the community, and secure himself from bodily violence, he pleaded guilty to the charges contained in such indictments, and was sentenced to the maximum limit of punishment — 21 years' confinement in the penitentiary at hard labor, in each case. In March, 1892, in the district court of Marion county, he brought proceedings in the nature of those known to the common law as writs of error *coram nobis*, to revoke the aforesaid sentences, and to set aside the pleas of guilty, upon the ground that such pleas had been extorted from him by duress and threats and appearances of impending and imminent mob violence, operating upon his fears, whereby he had not been allowed his constitutional rights to plead his innocence of the charges alleged against him in said indictments, to defend against the same in person and by counsel, to meet the witnesses against him face to face, and to have a public trial by an impartial jury. A trial was had in the error *coram nobis* proceeding at the September term, 1892, before the court and a jury, and the jury returned a general verdict in favor of the plaintiff, Calhoun, and also returned a special verdict, which, omitting title and signature, reads as follows:

"We, the jury impaneled and sworn, upon our oaths do

find, that in the cases numbered 1546 and 1547, in the district court of Marion county, Kansas, at its February term for the year 1885, wherein the state of Kansas was plaintiff and Robert Calhoun was defendant, being indictments for the offenses of carnally knowing females under the age of 18 years, confided to his care and protection, found and returned by the grand jury of said county, at said term, and to which said indictments said defendant pleaded guilty, that the said pleas of guilty were made by said defendant unwillingly and involuntarily, and under the influence and duress of his fears of death or great bodily injury being inflicted upon him by a mob, if he did not so plead guilty to such indictments."

A motion by the state for a new trial was made, and overruled; findings of fact were made by the court in accordance with the verdict of the jury, and judgment was rendered by the court revoking the sentences and the pleas of guilty, awarding the accused a trial in each case, ordering his release from confinement in the penitentiary, directing the warden to deliver him to the jailer of Marion county, and directing the issuance of warrants for his arrest and commitment to the jail of such county pending the trials to be had. The state in various ways interposed objections to the jurisdiction of the court, and to the sufficiency of the facts alleged and proved, interposed the statute of limitations in bar of the proceedings, and objected to the admissibility of some of the plaintiff's evidence, and preserved proper exceptions to all adverse rulings.

Before proceeding to the discussion of the questions presented by counsel as being involved in this case, it would be well to state that it is admitted by counsel that the proceedings in the lower court were civil in their nature, and not criminal, and that the remedy of petition in error, and not appeal, is the proper remedy in this court.

The first question presented by the state — which was the defendant below and is the plaintiff in error — is, that the court below had no jurisdiction to hear or determine any of the matters in controversy in this case, no power to set aside the aforesaid sentences or pleas, and no power to grant trials

34—50 KAS.

in the aforesaid criminal cases. It is admitted on the part of Calhoun — the defendant in the criminal cases, the plaintiff below in this proceeding, and the defendant in error in this court — that no express remedy is given to him, or to anyone else similarly situated, under any express provision of any statute; but he claims that he has a remedy under the principles of the common law, and, inferentially, under those provisions of the statutes which recognize the existence and binding force of the common law. That the common law has existence in Kansas, in some cases and to some extent, we suppose all will admit. It has existence and force in all cases where the same is not inconsistent with the constitution or the statutes or the institutions of this country, and where, except for the common law, proper remedies for injustice and wrong, and for the redress of grievances, would not be furnished. The territory now occupied by the state of Kansas has belonged to the United States ever since the year 1803; and the government of the United States recognizes and enforces the common law everywhere, except where it is otherwise provided by the constitution or statutes, or where it is inconsistent with the institutions of this country. This same territory was also once, and from 1804 to 1812, under the jurisdiction and control of Indiana territory (2 U. S. Stat. at Large, p. 287); and was also once, from 1812 to 1820, under the jurisdiction and control of Missouri territory (2 U. S. Stat. at Large, p. 743, *et seq.*), both of which territories recognized the common law. At the last-mentioned date, a portion of Missouri territory was admitted into the union as a state. (3 U. S. Stat. at Large, p. 545.) In 1854, the territory now constituting the state of Kansas became an organized territory; and, from 1855 up to 1861, it was governed by its own territorial laws and the laws of the United States, when, in 1861, it became a state. As early as 1858, the following statute was enacted by the territorial legislature of Kansas, to wit:

"Sec. 603. That rights of civil action, given or secured by existing laws, shall be prosecuted in the manner provided

for by this code, except as provided in section 604. If a case ever arises in which an action for the enforcement or protection of a right, or the redress or prevention of a wrong, cannot be had under this code, *the practice heretofore in use* may be adopted, so far as may be necessary to prevent a failure of justice." (Civil Code of 1858, § 603.)

A similar statute has been in force ever since and is now in force. (Civil Code of 1868, § 727; Gen. Stat. of 1889, ¶ 4841.) Also, the common law, *by express enactment,* has been in force in Kansas almost from the beginning. The present statute with regard thereto reads as follows:

"Sec. 3. The common law, as modified by constitutional and statutory law, judicial decisions, and the condition and wants of the people, shall remain in force in aid of the general statutes of this state." (Gen. Stat. of 1889, ¶ 7281.)

In the case of *Sattig v. Small,* 1 Kas. 174, which was decided in 1862, it is said, in the opinion of the court, among other things, as follows: " The common law was in force here when the organic act passed." (See, also, *U. P. Rly. Co. v. Rollins,* 5 Kas. 175.)

There are but few statutory actions in this state. Nearly every right of action in this state is founded upon and given only by the all-reaching principles of the common law, and generally it is only the *procedure* and not the right of action that is furnished or regulated by statute; and even as to procedure the statutes sometimes fail, and in such cases parties must resort to and invoke the aid of the common law. That such a remedy as the one resorted to by the plaintiff in this proceeding existed at common law, there can be no doubt; and we think it still exists wherever it is necessary to invoke its aid. See the case of *Sanders v. The State,* 85 Ind. 318, and the many authorities there cited. Is it possible that a person, who, under fear of mob violence and of death or great personal injury, is compelled to plead guilty to a criminal charge, and to be sentenced to imprisonment and hard labor in the penitentiary, is without remedy to restore to him his lost rights? But, if he has no remedy, then what be-

comes of the guaranties of our own state constitution? Sections 10 and 18 of the bill of rights of our constitution read as follows:

"SEC. 10. In all prosecutions, the accused shall be allowed to appear and defend in person, or by counsel; to demand the nature and cause of the accusation against him; to meet the witness face to face, and to have compulsory process to compel the attendance of witnesses in his behalf, and a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed. No person shall be a witness against himself, or be twice put in jeopardy for the same offense."

"SEC. 18. All persons, for injuries suffered in person, reputation, or property, shall have remedy by due course of law, and justice administered without delay."

If any court has jurisdiction of proceedings like the present, it is in the district court. Under § 3, article 3, of the constitution, the supreme court has original jurisdiction only in proceedings in *quo warranto, mandamus,* and *habeas corpus,* and such appellate jurisdiction only as may be provided by law, and neither the constitution nor any statute has given to the supreme court, nor, indeed, to any other court, unless it is the district court, any jurisdiction in any proceeding like the present. Under § 1 of the act relating to district courts, the district court is made a court of record, and is given "general original jurisdiction of *all matters, both civil and criminal,* not otherwise provided by law." (Gen. Stat. of 1889, ¶ 1961.) And jurisdiction like the present has not been otherwise provided for by the constitution or by any statute. Upon the whole, we think the district court, and it alone, has jurisdiction in cases like the present, and this opinion follows from a consideration of the common law and the constitution and the statutes both of this state and of the United States, viewed in the light of history and of usage, and under the decisions of our own courts and of the courts elsewhere.

But it is claimed that, even if the district court has jurisdiction in cases like the present, still that the plaintiff's

present action or proceeding was barred by some statute of limitations before it was commenced. The original pleas of guilty took place and the sentence and judgments following them were rendered on March 2, 1885, and this present proceeding was not commenced until some time in March, 1892, more than seven years having in the meantime elapsed; and it is now claimed by the state that the proceeding was barred, either by the two-years statute of limitations (Civil Code, § 18, subdiv. 3), or by the five-years statute of limitations (same section, subdiv. 6). There are decisions which hold that no statute of limitations can ever operate in cases like the present. (*Powell v. Gott*, 13 Mo. 458; *Latshaw v. McNees*, 50 id. 381.) But it is not necessary, as we think, to hunt for decided cases. Our statutes govern. Section 19 of the civil code provides as follows:

"SEC. 19. If a person entitled to bring an action other than for the recovery of real property, except for a penalty or a forfeiture, be, at the time the cause of action accrued, under any legal disability, every such person shall be entitled to bring such action within one year after such disability shall be removed."

And § 1, subdivision 27, of the act relating to the construction of statutes, reads as follows:

"27th. The phrase 'under legal disability' includes persons within the age of minority, or of unsound mind, or imprisoned." (Gen. Stat. of 1889, ¶ 6687.)

But it is claimed on the part of the state, that if the plaintiff in this proceeding was under such a legal disability that the statute of limitations would not run against such a proceeding, then that he was under such a legal disability that he could not commence or maintain the proceeding at all; or, in other words, it is claimed that, if from fears of his life or of great personal injury, and to avoid death or great personal injury, he pleaded guilty to a criminal charge, and was sentenced thereon to imprisonment and hard labor in the penitentiary for a term of years exceeding the time prescribed by the statute of limitations within which he could commence his

action or proceeding, then that he was and is wholly without remedy; for he was under such a legal disability that he could not commence any such proceeding to set aside the sentence or the plea while imprisoned, nor until the term for which he was sentenced to imprisonment should expire. Under the statutes of limitations, he would have one year after the disability from imprisonment was removed within which to commence his action. (Civil Code, § 19.) But could he not commence his action before the beginning of that year and while he was still imprisoned? What would be the use of his commencing any action or proceeding to relieve him from the consequences of his sentence after he had served in the penitentiary the full time for which he was sentenced? The commencing of any action or proceeding would then be of no benefit to him. It must be remembered that the plaintiff's imprisonment commenced before he made his pleas in the criminal cases, and has continued without any interruption up to the present time. While we think that, under the statutes, the plaintiff is and has been under such a legal disability that the statute of limitations has not operated against his remedy, yet we think that he has not been under such a legal disability as would prevent his commencing or maintaining an action to restore him to his just rights, provided, of course, that some friend would commence and conduct the proceeding for him. We do not think that the plaintiff's remedy in this case is barred by any statute of limitations.

The state also claims that the court below erred in excluding certain evidence. It appears that on May 25, 1892, the deposition of the plaintiff below, Calhoun, was taken in Leavenworth county, and presumably in the penitentiary, where he was confined. In that deposition, he stated that the relation of attorney at law and client never existed between himself and C. W. Keller. Afterward, and on the trial of this case, which occurred on September 12, 1892, in Marion county, the deposition was read in evidence. Also, the oral testimony of Mr. Keller was introduced in evidence on the part of the

plaintiff, Calhoun. It appeared from the testimony of both these witnesses that they had had a conversation about the last day of February, 1885, in the county jail of Marion county, where Calhoun was then imprisoned; and Mr. Keller also testified that at the time of this conversation he was employed as an attorney at law by Calhoun, and that the conversation then had was had between them in the relation of attorney and client. Notwithstanding this, the state offered to introduce the testimony of Mr. Keller to show what the conversation was, but Calhoun's counsel in this case, Frank Doster, objected, upon the ground that the conversation consisted of confidential communications had between them as attorney and alient; and the court excluded the evidence; and this the state claims was 'error. Calhoun himself was not present at the trial. We do not think that any error was committed in the exclusion of this evidence. (Civil Code, § 323, subdiv. 4.) The court below heard the oral testimony of Mr. Keller, and could determine from it, and from Calhoun's deposition, very much better than we can whether the conversation had between Keller and Calhoun in the county jail was a confidential conversation had between them as attorney and client or not; and if it was such a conversation, (and we must hold that it was,) then the court below certainly did not err in excluding it. More than seven years had elapsed after the conversation had occurred, and before Mr. Calhoun's deposition was taken, and during all that time, except a few days, Calhoun had been confined in the penitentiary at hard labor; and it cannot be expected that his memory would be as good as that of Mr. Keller. It is probable that if he had had an opportunity to have had his memory refreshed by another conversation with Mr. Keller he would have made a different statement. We do not think that he was conclusively bound by his statement made in his deposition, but he had the right, through his counsel, to show by the testimony of Mr. Keller that the relation of attorney and client in fact existed between them at the time of the conversation had in the county jail in 1885, and therefore that what

was said during that conversation could not be given in evidence over the objections of his counsel in this case.

It is further claimed, that the court below erred in permitting the plaintiff, Calhoun, to prove threats made against his life both before and after the pleas of guilty in the criminal cases, and threats not communicated to him before his pleas. We do not think that any error was committed in this respect. It was very proper to show the temper of the mob, for the purpose of showing whether any real danger existed as to the life of Calhoun, and these threats tended to show this fact. All the threats proved that were made after Calhoun entered his pleas of guilty were made on the same day, and before the mob had completely dispersed. Of course, it was a very important fact — indeed a necessary fact — as to whether Calhoun entertained fears of his life or great personal injury at the time he entered the pleas or not; but the fact that he had substantial grounds for such fears was another very important fact, and it was proper that evidence of that fact should also be given to the jury.

It is also claimed that the court below erred in instructing the jury, in substance, that they had no right to consider the question of the guilt or innocence of Calhoun. We would think this instruction was correct. It can scarcely be possible that a mob, by compelling a person accused of crime to plead guilty thereto, and be sentenced to imprisonment and hard labor in the penitentiary, can thereby shift the burden of proof from the state to the accused. Can a mob by this means abrogate all presumptions of innocence? Can the mob cast the burden upon the accused of proving his innocence, and of proving it by a preponderance of the testimony, and relieve the state of proving his guilt, and of proving it by evidence sufficient to remove every reasonable doubt? A mob has no right, by any means, to shift the burden of proof from the state to the accused, or to relieve the state from proving the guilt of the accused beyond a reasonable doubt, and no right to compel the accused to prove his innocence, and to prove it by a preponderance of the evidence. The accused

had the right to be placed back in the same condition as he was before he entered his pleas of guilty. He had the right to be placed back in such a condition that he could avail himself of all the right given to him by §§ 10 and 18 of the bill of rights of the constitution, above quoted, and also of § 228 of the criminal code, and of all the other provisions of the constitution and the statutes adopted or enacted in the interest of fair trials and of liberty and justice. On the final trials in the criminal cases he can be fairly tried, and, if his guilt shall then be fairly established, he can then be sentenced according to law. At the present, and in this proceeding, he is not required to establish his innocence. We think no error was committed in this respect.

It is further claimed by the state, that the court below erred in refusing to give a certain instruction that, if Calhoun entered his pleas of guilty because he was in fact guilty, and honestly desired to enter such pleas irrespective of any fear of mob violence, then that the fact that he was threatened with mob violence was not sufficient to avoid the sentence of the court. There are at least two sufficient answers to this claim of error: First, the court in substance gave the instruction in its general charge; and, second, the special findings of the jury would cure any error that might have intervened in this respect.

After a careful consideration of all the points presented by counsel in this case, we are of the opinion that no substantial error was committed by the court below. With regard to actions or proceedings in this country in the nature of writs of error *coram nobis* a valuable note will be found appended to the case of *Holford v. Alexander*, 46 Am. Dec. 257–261. Upon the points made by counsel, our decision is as follows:

1. Where the accused in a criminal prosecution in the district court is forced, through well-grounded fears of mob violence, to plead guilty to the criminal charge, and to be sentenced to imprisonment and hard labor in the penitentiary for a term of years, he has a right to relief from such sentence

and plea by an action or proceeding in the same court in the nature of a writ of error *coram nobis*.

2. And in such a case, where the accused was sentenced to imprisonment in the penitentiary for a period of 42 years, and, after having served for more than seven years of that term, he commences an action in the nature of a writ of error *coram nobis* to set aside such sentence and plea, his action is not barred by any statute of limitations, for the reason that no statute of limitations will operate against the remedy of a party while he is under the legal disability of imprisonment.

3. In such a case, where a deposition of the accused was read in evidence on the trial in his action for relief, and in such deposition was a statement made by him that the relation of attorney and client had never existed between himself and K.; but the oral testimony of K., introduced on the trial, showed that such relation did once exist, and that a certain conversation had between them more than seven years prior to that time and while that relation existed was a confidential conversation had between them as attorney and client, and the state offered to show what that conversation was; but the accused, through his counsel in the action for relief, objected, and the court excluded the evidence: *Held*, That the supreme court cannot say that any error was committed.

4. In such a case, where the trial court permitted the accused to show threats of mob violence made both before and after, but on the same day of the entering of his plea of guilty, and many of which threats were not communicated to the accused before his plea was entered, *held*, not error; that the evidence tended to show that there was a real danger from mob violence, and that the fears of the accused were well founded, and that the evidence was proper to go to the jury.

5. And further *held*, that the question of the guilt or innocence of the accused in such a case is not a necessary question to be determined in the case; that a mob cannot, by

compelling a person accused of crime to plead guilty and to be sentenced to imprisonment and hard labor in the penitentiary, so shift the burden of proof from the state to the accused as to compel the accused to prove his innocence, and to prove it by a preponderance of the testimony, and to relieve the state from proving his guilt, and from proving it by evidence sufficient to remove every reasonable doubt. The accused has the right to be placed back in the same condition as he was before he entered his plea of guilty.

6. And it is further *held*, that no error was committed in refusing instructions.

The judgment of the court below will be affirmed.

All the Justices concurring.