A. E. COPPOCK, Appellant, v. THOMAS H. REED et al., Appellees.

COURTS: Modification of Correct Record. No power exists in a court of equity to disturb or in any wise modify an absolutely correct judicial record. So held where a party, years after he had been convicted of crime, applied for an order expunging from admittedly correct record shorthand notes, a paragraph of testimony alleged by him to be false and perjured.

*Appeal from Crawford District Court.*—E. G. ALBERT, Judge.

JULY 6, 1920.

REHEARING DENIED SEPTEMBER 25, 1920.

A DEMURRER to the petition on the ground that the facts alleged did not warrant the relief sought, was sustained. The plaintiff appeals.—*Affirmed.*

*Brown McCrary* and *John Urbany,* for appellant.

*Thos. H. Reed,* for appellee.

LADD, J.—According to allegations of the petition, plaintiff was convicted of the crime of cheating, in 1911, sentenced to serve 7 years in the penitentiary, so did, and about 18 months after his discharge, discovered evidence which, in connection with that adduced at the trial, as is alleged, established his innocence; and in this action he prayed that the records in which false statements appear, injurious to plaintiff's rights, be annulled and changed, and that said statements be expunged from such records. It seems that plaintiff drew a check for $6.50 on the First

National Bank of Shenandoah, Iowa, of which defendant Reed was president, and gave it to one Johnson for value; that the bank refused to honor the check; that Reed, who was the president of the bank, and M. L. Ayers, deceased, caused him to be prosecuted criminally, as above recited, and appeared as witnesses; and that their testimony was taken down in shorthand, and made a part of the record of the court. Ayers was asked:

"Q. Did you ever authorize him to sign your name to checks drawn on the First National Bank of Shenandoah, Iowa? A. No, sir. Q. Did you ever make any arrangements to honor or have the First National Bank of Shenandoah honor any checks which the defendant might draw on you at any time? A. No, sir. Q. Did defendant, to your knowledge, sign your name to any checks drawn on the First National Bank of Shenandoah at any time? A. Yes, sir. Q. Did you make the payment of any one of these checks? A. No."

Reed testified:

"I examined all checks; never honored a check signed M. L. Ayers, per A. E. Coppock. I should say no arrangements were made to honor checks. I say we never did. We never had the authorized signature of A. E. Coppock. * * * He cashed one check at our bank for $5.00, drawn on some bank in Omaha, which I cashed;" and that he had other checks.

The petition says that this testimony was false, for that these witnesses had arranged that plaintiff might draw checks on said bank, and thereby did induce plaintiff to make the check mentioned; that they testified to induce the jury to convict the plaintiff; that the latter had no means other than testifying that he had authority to draw the check, and that the bank had honored other checks, and that he never drew a check on an Omaha bank, but did draw one for $5.00 on the Bank of Dedham, Iowa, with which he had arranged that his checks should be honored; that the jury, however, accepted the testimony of Reed and Ayers, and convicted him; that, subsequent to his service in the

penitentiary, he had ascertained that, in litigation between
Reed and Ayers, in 1911, both had agreed to changing a
check or checks signed by plaintiff, and paid by the bank to
Ayers; and that Reed admitted in writing, in December,
1917, that the check on the Bank of Dedham had been pre-
sented to and paid by the First National Bank. Plaintiff
averred that the alleged false statements of these men at
the trial were believed, and will continue to be believed,
to the detriment of his reputation for veracity; that both
have remained silent, and not corrected their testimony, as
it was their duty to do; that the plaintiff is without a rem-
edy, save by a court of equity; that said false records and
evidence are "a continued slander and injury to this plain-
tiff, and an invasion on his personal rights of life, liberty,
and pursuit of happiness, as guaranteed by the Constitu-
tion; and that the officers, in permitting the records to re-
main, would be violating the said rights, guaranteed to the
plaintiff as a citizen." He prayed for a decree "that the
records, wherein they show false statements that are in-
jurious to plaintiff's rights, be annulled, changed, and ex-
punged from the records."

By sustaining the demurrer, the district court ruled that
the facts alleged did not entitle the plaintiff to the relief
prayed; and rightly so. The shorthand notes, upon being
certified as required, became a part of the record. Section
3675 of the Code. It is not pretended that these did not
truly represent precisely what Reed and Ayers testified to.
The contention is that, though truthfully preserved in the
shorthand notes, their testimony was false in the particu-
lars alleged, and that, because of this, such testimony be
"annulled, changed, and expunged from the records:" i. e.,
the shorthand notes. The clerk of court is charged with the
duty of keeping the court records. Section 287 of the Code.
These, as made up, may be corrected, amended, or supplied
by order of the court. Sections 243, 244, and 4127 of the
Code; *Goodrich v. Conrad,* 28 Iowa 298; *Ormsby v. Gra-
ham,* 123 Iowa 202; *Lambert v. Rice,* 143 Iowa 70. But we
know of no authority which will justify annulling, chang-

ing, or expunging an absolutely correct record. Certainly, this may not be done through the writ of error *coram nobis;* for that does not lie, even if available in this state, to correct an issue of fact which has been adjudicated, nor for alleged false testimony at the trial (*Beard v. State,* 81 Ark. 515 [99 S. W. 837]; *State v. Stanley,* 225 Mo. 525 [125 S. W. 475]; *State v. Armstrong,* 41 Wash. 601 [84 Pac. 584]; *Asbell v. State,* 62 Kan. 209 [61 Pac. 690]; *Wilson v. State,* 46 Wash. 416 [90 Pac. 257]; 16 Corpus Juris 1327); nor for newly discovered evidence (*Asbell v. State,* supra). Conceding that there should be a remedy for every wrong, as contended, it is to be said that such remedy was afforded plaintiff in the opportunity to prove the alleged false testimony of Ayers and Reed untrue. That he was unable so to do, or that he later discovered facts which tended to sustain his story, as contradicting theirs, does not militate against our conclusion that he was accorded the opportunity. The judgment in the criminal case, not having been appealed from, is conclusive as to every element essential to plaintiff's conviction of the offense charged, and may not be relitigated on the specious pretext put forward in this case. In other words, the issue as to whether Reed and Ayers spoke the truth was there adjudicated, and cannot be reheard in this action. Whatever of odium attaches to plaintiff or to his name is incident to conviction of the crime of which he was found guilty. Having had his day in court, he may not invoke vindication in a subsequent hearing in equity. To change the record, as prayed, would not make it speak the truth, but prevent it, by suppressing the truth.

In *In re Molineux,* 177 N. Y. 395 (65 L. R. A. 104), Molineux was convicted of murder, and sentenced to death. During his imprisonment, his photograph was taken, and he was measured according to the Bertillon system, and the photograph and measurements preserved by the superintendent of the prison, as required by law. Upon appeal, the conviction was reversed, and on another trial, he was acquitted. Thereupon, he brought an action to have these removed from the public record, and for possession thereof.

In denying the relief, the court said:

"The custodian of a public record cannot deface it or give it up, without authority from the same source which required it to be made. The statute directed the superintendent to make the record, and when he made it, the state made it, and it has not authorized him to destroy it under any circumstances, not even to relieve a citizen from an unjust reflection upon his character. It would be usurpation of power for him to surrender the record or for the court to direct him to do so. If the position of the defendant is sound, where is the destruction of public records to end? What may become of the indictment, the minutes of the clerk, recording the verdict of guilty and the judgment of conviction? May the death warrant be withdrawn from the custody of the warden, although it is the only authority he had for the imprisonment of Molineux while he was awaiting execution? Even the courts, which have control of their own records, do not direct one made through error to be physically destroyed, although they vacate it and direct that it shall be held for naught."

The cases cited by appellant are not in conflict with this, but concern different statutes. See *Mabry v. Kettering,* 89 Ark. 551 (16 Am. & Eng. Ann. Cas. 1123); *Schulman v. Whitaker,* 117 La. 703 (7 L. R. A. [N. S.] 274); *Downs v. Swann,* 111 Md. 53 (23 L. R. A. [N. S.] 739); *Hodgemann v. Olsen,* 86 Wash. 615 (L. R. A. 1916 A 739). The statutes, on sound reason, direct the preservation of the records of trials. If these are defective, the power to correct or amend is conferred on the courts; but neither the clerk, who is custodian thereof, nor the courts are clothed with authority to destroy or expunge a record, or any part thereof, when without defect and true. The ruling of the court in sustaining the demurrer is—*Affirmed.*

WEAVER, C. J., GAYNOR and STEVENS, JJ., concur.