A. J. BOYD, Plaintiff, v. JAMES D. SMYTH, Judge, Respondent.

**CRIMINAL LAW: Writ of Error Coram Nobis.**  The common-law writ of error *coram nobis* is not recognized in this state.

**Headnote 1:** 16 C. J. p. 1326.

*Certiorari to Henry District Court.*—JAMES D. SMYTH, Judge.

OCTOBER 20, 1925.

APPLICATION for writ of error *coram-nobis* was filed with the respondent on the 29th of May, 1925, which, on hearing, was refused, and this ruling is now before us by writ of certiorari.—*Affirmed.*

*Lloyd L. Duke,* for plaintiff.

*Ben J. Gibson,* Attorney-general, *Neill Garrett,* Assistant Attorney-general, and *John G. Barwise,* for respondent.

ALBERT, J.—The plaintiff, A. J. Boyd, was indicted in 1921 for the crime of receiving stolen property. The trial resulted in a conviction, which was appealed from and reversed. *State v. Boyd,* 195 Iowa 1091. He was again tried and convicted, and this was reversed on appeal. *State v. Boyd,* 196 Iowa 226. On the third trial, the conviction was affirmed. 199 Iowa 1206. A petition for rehearing was filed on the last appeal, in which it was sought to show the matters of which complaint is made in this application for the writ. This court refused to consider the same, and the petition for rehearing was overruled on April 8, 1925. The plaintiff, Boyd, then filed his application for a writ of error *coram nobis* with the Hon. James D. Smyth in the Henry County district court on the 29th day of May, 1925, setting up as a basis therefor that one Glen Hoskinson, who, it is claimed, was the principal witness on the part of the State, and without whose testimony conviction could not have been made, is now insane, and a patient at the Iowa state hospital at Mt. Pleasant; that said witness was insane at the time he gave his testimony which led to the conviction of the plaintiff herein; that neither the plaintiff herein nor his attorney knew or discovered the fact of the insanity of the said witness until the matter was submitted to this court; that the insanity of said witness was not in issue in the trial of said cause, because it was not then known to the plaintiff herein, or to his counsel.

The respondent herein denied the application of plaintiff for said writ, and the same is now before us on certiorari. It is the contention of the respondent herein, first, that the common-law writ *coram nobis* is not available under Iowa practice; second, that, if available, the facts herein do not warrant the issuance of said writ.

The writ *coram nobis,* sometimes called *coram vobis,* was a common-law writ which originated in the practice in England prior to the days when the parliamentary enactment authorized the writ of error. The purpose of such writ was to correct or vacate a judgment in the court in which it was rendered, on account of matters not appearing on the face of the record. 2 Ruling Case Law 305 states:

"The distinction between an ordinary writ of error and a writ of error *coram nobis* is that the former is brought for a

supposed error in law apparent on the record, and takes the case to a higher tribunal, where the question is to be decided and the judgment, sentence or decree is to be affirmed or reversed; while the latter is brought for an alleged error in fact not appearing on the record, and lies to the same court, in order that it may correct the error which it is presumed would not have been committed, had the fact in the first instance been brought to its notice.''

It cannot be used for the purpose of correcting errors at law. 34 Corpus Juris 392, Section 602. It was limited to errors of fact not appearing on the face of the record, which fact was unknown to the court, and which, if known in season, would have prevented the rendition and entry of a judgment challenged. 34 Corpus Juris 393, Section 605, and cases therein cited.

After the English parliament passed the act authorizing writs of error in their court, this writ *coram nobis* fell into disuse, and has become entirely obsolete in their practice. It has been used very little in the United States, and in the three or four states where it has been recognized as a common-law writ, its use has been very limited. In the English practice, the distinction between the writs *coram nobis* and *coram vobis* depended upon the court in which the proceeding existed. If in the king's bench court, it was called *coram nobis,* and if in the common pleas court, *coram vobis.*

In our search we have found three states which recognize the writ because of its being provided for by statute in those states. Aside from this, in a labored search, we have been unable to find that it is being generally used in any other of the states of the Union.

We are met with a primary question as to whether, under any circumstances, the writ *coram nobis* is available under Iowa practice. This writ was available by Chapter 28 of the Territorial Laws of Iowa, 1843-44, the act being approved on February 15, 1844. A careful reading of this chapter leads to the conclusion that the enactment was not as broad as the English rule governing this writ. It appears that the legislature intended it to apply only in civil actions. This legislation became a part of the Code of 1851, appearing therein as Chapter 112,

While this statute was in effect, two civil cases were passed on by this court: one, *Mears v. Garretson,* 2 G. Greene 316; the other *McKinney v. Western Stage Co.,* 4 Iowa 420. Neither of these cases is of any aid in determining the question before us.

When the Revision of 1860 was adopted, this legislation was entirely omitted. It is settled law that, where statutes are revised, and some parts of the original are omitted, the parts omitted cannot be revived by construction, but are considered annulled. 36 Cyc. 1080, and cases therein cited. Hence it must follow that the omission of this chapter was, by implication, intended as a repeal thereof; but we need not rely upon a repeal by implication, for the reason that, in the Revision of 1860, Chapter 4, Section 31, we find the following provision:

"All public and general acts passed prior to the present session of the general assembly, and all public and special acts the subjects whereof are revised in this Code, or which are repugnant to the provisions thereof, are hereby repealed, subject to the limitations and with the exceptions herein expressed."

Certain limitations and exceptions are provided, none of which in any way affect the question involved. It is apparent, therefore, that, under our practice, from 1844 to 1860 the writ *coram nobis* was not only recognized, but specifically provided for by law.

It is held in *Buck v. Spofford,* 31 Me. 34, that the omission thus made raises a presumption that a change is intended in the law; and we are of the opinion that not only the omission of that chapter, but also the above quoted section from the said Revision of 1860, repealing the same, show on their face that it was the legislative intent that the writ *coram nobis* should no longer be used in the state of Iowa. This is the logical conclusion that must follow, for the reason that, in the Revision of 1860, when it omitted the chapter on *coram nobis* that was formerly in the Code of 1846, it enacted what has now grown into Chapter 552 of the Code of 1924. The provisions of this chapter are broad enough to cover all cases arising which seek to vacate or modify a judgment; but this is, and always has been, a chapter in the code of civil procedure, and has afforded a remedy in all instances where a judgment could be vacated or

modified. Our code of criminal procedure, however, has no provision corresponding to the aforesaid Chapter 552.

Chapter 652 of the Code of 1924 defines a new trial as follows:

"Section 13942. A new trial is a re-examination of the issue in the same court before another jury, after a verdict has been given."

Section 13944 enumerates the grounds of a motion for a new trial. The eighth ground thereof reads as follows:

"When from any other cause the defendant has not received a fair and impartial trial."

It is quite apparent, therefore, that the complaint on which this writ is sued out, if available at all, would be covered by the eighth ground above quoted. It is not available to the applicant herein, however, because Section 13943 provides that it must be made before judgment. No provision is made in the criminal code for filing a motion for new trial, or to vacate a judgment, after sentence and judgment have once been pronounced and entered of record. This shows that the legislature recognized and had in mind that there might be causes for the granting of a new trial, if in fact the defendant had not received a fair and impartial trial; but the legislature has limited the right of the defendant to raise such question, and by the aforesaid section has provided that he must make application before judgment. The legislature having so limited this matter, it does not seem to us that this court has power to override the act of the legislature and to hold, as we are urged by the applicant herein, that there is a right to have the judgment reviewed by reason of some matter which shows that he has not had a fair and impartial trial.

In the states of the Union which adopted the common-law practice, this writ still seems to survive. *Adler v. State,* 35 Ark. 517; *State v. Calhoun,* 50 Kan. 523; *In re Ernst,* 179 Wis. 646 (192 N. W. 65); *Trattner v. State,* 185 Ind. 188 (113 N. E. 243).

One of the last cases that have been called to our attention is the case of *Alexander v. State,* 20 Wyo. 241, but the opinion states:

"Counsel for the State do not, in their brief or argument,

controvert the right to a writ of error *coram nobis* in a proper case.''

The case holds that the evidence was not sufficient to warrant the issuance of the writ.

The Mississippi court recognized the use of the writ, but they say, in *Fugate v. State*, 85 Miss. 94:

''But in general, and in the practice of most of the states, this remedy is nearly exploded, or at least superseded by that of amending on motion.''

Then quoting from *Sanders v. State*, 85 Ind. 318, at 329, it says:

'' 'It is our opinion that the courts have the power to issue writs in the nature of the writ *coram nobis*, but that the writ cannot be so comprehensive as at common law; for remedies are given by our statute which did not exist at common law,—the motion for a new trial and the right of appeal,—and these very materially abridge the office and functions of the old writ. These afford an accused ample opportunity to present for review questions of fact arising upon or prior to the trial, as well as questions of law; while at common law the writ of error allowed him to present to the appellate court only questions of law. Under our system, all matters of fact reviewable by appeal or upon motion must be presented by motion for new trial, and cannot be made the grounds of an application for the writ *coram nobis*. Within this rule must fall the defense of insanity, as well as all other defenses existing at the time of the commission of the crime. Within this rule, too, must fall all cases of accident and surprise, of verdicts against evidence, of newly discovered evidence, and all like matters.' We think this a sound declaration of the present office and scope of this writ, from which it necessarily follows that it cannot be invoked in our practice for the purpose of revoking the judgment by showing that jurors had formed or expressed opinions unfavorable to the defendant.''

In the case of *Peak v. Shasted*, 21 Ill. 137, decided in 1859, the court said, in substance, that, by the former practice in England, the only way in which a judgment could be reversed in the court in which it was rendered for error in fact was by writ of error *coram vobis;* but in many states of the Union this writ

has gone into disuse, and has been superseded by motion to amend. The latter was the practice in Illinois, and that court has ever since refused to recognize the writ *coram nobis.*

In several Tennessee cases the writ has been supported; but, as the statutes of that state specifically provide for the issuance of such writ, those decisions are of little aid to us.

In the Ohio Supreme Court, in 1834, a writ *coram nobis* resident was issued in a civil case, to review the judgment of the lower court. See *Dows · v. Harper,* 6 Ohio 225, where it is said:

"If the necessity for a writ of error to the king's bench, in the state of things in England, was a good reason for the use of the writ there, the same reason exists in this state."

The New York court took this same view in *DeWitt v. Post,* 11 Johns. (N. Y.) 460; but the practice in each of these states, by reason of the adoption of codes later, seems to have become entirely obsolete.

In a later Ohio case, *State v. Hayslip,* 90 O. St. 199 (107 N. E. 335), the court said:

"We find that in Ohio the common-law writs and pleas are designated and defined by statute just as crimes are designated and defined by statute. The writs of *coram nobis* and *coram vobis,* which are invoked in behalf of the. defendants in error, are no part of the criminal jurisprudence of the state of Ohio."

Following this line of logic, it is to be noted by an inspection of our Code that it is a complete criminal code in itself, making provision for various pleas, also for motions for new trial in arrest of judgment, and giving the defendant the right of appeal. Under our practice, when a criminal case is appealed, the duty of the Supreme Court is to review the errors, if any, in the record. In effect, under the Iowa practice the appeal in a criminal case has the same force and effect as does a writ of error in the courts where the same is used. It follows that, the legislature having provided a complete criminal code, and not having provided for any writ of error *coram nobis,* such writ is not available, under the practice in this state.

In *Coppock v. Reed,* 189 Iowa 581, an action in equity was brought, to expunge and correct a record in a criminal case that

had been tried several years before, in which Coppock was the defendant. In the discussion of that case, this court said:

"Certainly this may not be done through the writ of error *coram nobis;* for that does not lie, even if available in this state, to correct an issue of fact which has been adjudicated, nor for alleged false testimony at the trial, * * * nor for newly discovered evidence [citing authority]."

However, we are not disposed to dig into the musty archives of the past to resurrect and revivify ancient and worn-out writs that have long since been discarded and forgotten.

Aside from all this, it is settled by the decisions both in England and in this country that, after a judgment of sentence has been passed, if the defendant appeals his case and the decision is affirmed by the appellate court, by such appeal the defendant waived his right to a writ of error *coram nobis. Partlow v. State* (Ind.), 141 N. E. 513; *Latham v. Hodges,* 35 N. C. 267; *Lambell v. Pretty John,* 1 Strange 690 (93 Eng. Rep. 786); *Hillman v. Chester,* 12 Heisk. (Tenn.) 34.

Again, it is fundamental that the alleged fact which it is claimed the lower court did not have before it at the time it pronounced judgment must be such as would have prevented the court from entering the judgment that it did; and the writ will not lie where the complainant knew the fact complained of at the time of or before the trial, or by the exercise of reasonable diligence might have known it, or is otherwise guilty of negligence in the matter. 34 Corpus Juris 393, Section 605. The sole contention here is that the prosecuting witness was insane at the time he gave his evidence, which fact was unknown to the court or to the defendant or to his attorney, and is the basis of this application. Assuming the fact to be true that such prosecuting witness was insane, that would not have been a matter of defense for the defendant to have asserted on the trial. At most, the only thing about which the defendant complains is that, had he known of the insanity of the prosecuting witness, he could have had the fact called to the attention of the jury, and could have questioned the competency of the prosecuting witness. This is wholly an evidentiary matter, however, and to our minds is not such fact as is contemplated and required as a basis for such a writ if it were permissible to issue it. Assum-

ing that, in the trial of a case of this character, a witness who was wholly incompetent to testify was used by the State, the only right lost by the defendant by reason of want of knowledge of such incompetency was the right to object to the testimony and have it ruled out by the court. This is wholly a matter of procedure and trial of the cause. We do not deem it such a "fact" as could be used as a basis for any such writ. We are, therefore, of the opinion that the action of the lower court was correct in refusing to grant the prayer of the applicant's petition.—*Affirmed.*

FAVILLE, C. J., and EVANS, STEVENS, DE GRAFF, and MORLING, JJ., concur.

VERMILION, J., took no part.