[File No. 6533.]

EDWARD DIX, Respondent, v. MODERN WOODMEN OF AMERICA, a Corporation, Appellant,

and

G. V. DAVIDSON, as Guardian ad Litem of Donald M. Dix, a Minor.

(280 N. W. 663.)

Opinion filed June 17, 1938.

*C. D. Aaker* and *Nelson C. Pratt,* for appellant.
*Henry E. Johnson,* for respondent.

BURR, J. This is an action brought by the plaintiff as the beneficiary of one Albert F. Dix to recover on a benefit certificate issued by the defendant March 23, 1922, wherein it agreed to pay to the beneficiary named therein the sum of two thousand dollars "in case of the death of said member, Albert F. Dix, *while a beneficial member of said society in good standing.*"

The principal defense is that long prior to his death all rights and benefits of Albert Dix were forfeited, that the contract of insurance was cancelled, and all liability of the defendant thereunder ceased.

Judgment was entered in favor of the plaintiff and the defendant appeals.

The benefit certificate was issued to Albert F. Dix by the defendant under the conditions, rules, regulations and by-laws of the defendant, all of which were agreed to by the insured and were therefore part of the contract.

Among these conditions it was expressly agreed that if the insured ". . . is now engaged in *or hereafter shall engage* in the manufacture, sale, or transportation of intoxicating liquor, for beverage purposes," and further that if the said member "shall enter upon any of the prohibited . . . occupations mentioned in the By-Laws of this Society, as the same now exist or hereafter may be modified, amended, added to, or enacted, the entrance into said employment shall extinguish or limit the liability of this Society upon said certificate in accordance with the By-Laws thereof in force at the time of his death." (Italics ours.)

The By-Laws provided,

"Sec. 16. Membership forfeited by engaging in liquor business.— Any member of this Society who engages in the manufacture, sale, or transportation of intoxicating liquor for beverage purposes, shall by so engaging in said liquor business, *ipso facto,* forfeit his membership in this Society and all payments made on account of said membership, and his certificate shall be absolutely null and void, all without any action by his local Camp, or by this Society, or by any officer of either; and any payments thereafter made by him, of any dues or assessments, or the acceptance thereof by the local Camp, or by the Society, or by any officer of either, shall not waive such forfeiture nor reinstate him as a member.

"Sec. 17. Engaging in liquor business defined.—A person shall be deemed and held to be engaged in the manufacture, sale, or transportation of intoxicating liquor for beverage purposes, whenever he, with or without compensation, performs any of the work or duties incident to said liquor business."

The record shows beyond dispute that on or about December 14, 1925, the insured was arrested for the crime of engaging in the liquor traffic, after he had made and signed a confession that he had given away and sold intoxicating liquor as a first offense. There is some

dispute as to the disposition of this case. The records show the defendant was sentenced upon his plea of guilty, but it is now claimed this record is incorrect. We do not deem this dispute to be of consequence. The By-Laws did not require *conviction* of any crime involving the engaging in the liquor traffic. It was sufficient if the insured engaged in the business.

The record further shows that on June 15, 1928, an information was filed against the insured charging him with the crime "of engaging in the Liquor Traffic as a second offense against the Prohibition Laws of North Dakota." The defendant was arrested thereunder and at that time his written confession was filed in which he stated, "That on the 12th day of June, A. D. 1928 at Renville County, N. Dak. did wilfully and unlawfully sell Intoxicating Liquor, consisting of Alcohol, to one Paul Goheen of Sherwood, N. Dak. and did receive for the said intoxicating liquor the sum of One Dollar."

The defendant was then sentenced to serve a term of two years in the penitentiary. The state's attorney made out and filed the statement required by law to be made at that time and therein it is stated that the insured on December 14, 1925, entered his plea of guilty to an information in the first offense, charging him with the crime of engaging in the liquor traffic. The defendant served his sentence in the penitentiary and died November 22, 1930.

While in the penitentiary the defendant corporation sent to the insured what was called an "Occupation Statement" wherein he was asked on what date he first sold intoxicating liquor and he wrote the date "July 15, 1928." This statement also included this question: "(a) Since joining said Society, have you ever transported intoxicating liquor to be used as a beverage?" To which he answered "July 15." "(b) If so, explain fully and in detail," to which he answered "July 15 the first and last to a Federalman ½ Pint." Upon this record the defendant cancelled this benefit certificate.

In this action plaintiff insists the insured was not guilty of the first offense alleged, was not sentenced therefor, and at the time of the alleged second offense, and prosecution therefor, the insured was so mentally incompetent as to be immune from prosecution and punishment. It is also the claim of the plaintiff that at that time dues or premiums had been paid so as to carry the insurance past the date of cancella-

tion; but it is clear from the record that long prior to the death of the insured no payments of premiums were made to or received by the defendant company though the record contains proof indicating that premiums were tendered to the company and refused on the ground that the certificate had been cancelled.

On September 9, 1931, Mr. J. E. Bryans, as counsel for "the legal representative of the above named Albert Dix," applied to the District Court in which the defendant had been convicted and sentenced to vacate the judgment of conviction on the ground that the judgment of imprisonment in the penitentiary was void "because Mr. Dix was never convicted of the first offense," and that he was so mentally incompetent at the time of the commission of the second offense and the time of trial as to be immune from punishment. Just what was the nature of this legal representation is not shown.

It is true that under the provisions of § 11,172, Comp. Laws, "The rule of common law that penal statutes are to be strictly construed has no application to this code. This code establishes the law of this state respecting the subjects to which it relates, and its provisions and all proceedings under it are to be liberally construed, with a view to promote its objects, and in furtherance of justice." And under the provisions of § 11,179, Comp. Laws, "The procedure, practice and pleadings in the district courts of this state, in criminal actions or in matters of a criminal nature, not specially provided for in this code, shall be in accordance with the procedure, practice and pleadings under the common law;" and further, that under the common law the writ of coram nobis was used to enable the court rendering the judgment to reconsider it and to grant relief from errors of fact not appearing on the face of the record, when the latter was still before such court. See People v. Reid, 195 Cal. 249, 232 P. 457, 36 A.L.R. 1435. However, it may be a question whether such writ exists in this jurisdiction now, if it ever did. In such jurisdictions as Iowa, Massachusetts, Michigan, Ohio and Oregon the writ has been abolished by statute or become obsolete. See Boyd v. Smyth, 200 Iowa, 687, 205 N. W. 522, 43 A.L.R. 1381; Com. v. Sacco, 261 Mass. 12, 158 N. E. 167; Dewey v. Otsego Circuit Judge, 250 Mich. 377, 230 N. W. 180. In Texas the writ is held to be inapplicable to criminal cases. Hendricks v. State, 122 Tex. Crim. Rep. 429, 55 S. W. (2d)

839. In such jurisdictions as Arkansas, California, Florida, Illinois, Indiana, Kansas, Mississippi, Missouri, Nebraska, Wisconsin and Wyoming the writ is still in use, sometimes by statutory provisions which provide for a writ of similar import and in others because the rules of the common law are assumed to prevail. See Linton v. State, 72 Ark. 532, 81 S. W. 608; People v. Black, 114 Cal. App. 468, 300 Pac. 43; Nickels v. State, 86 Fla. 208, 98 So. 497, 502, 99 So. 121; People v. Nakielny, 279 Ill. App. 387; Trattner v. State, 185 Ind. 188, 113. N. E. 243; Dobbs v. State, 62 Kan. 108, 61 Pac. 408; Hawie v. State, 121 Miss. 197, 83 So. 158, 10 A.L.R. 205; State ex rel. Orr v. Latshaw, 291 Mo. 592, 237 S. W. 770; Carlsen v. State, 129 Neb. 84, 261 N. W. 339; Gelosi v. State, 218 Wis. 289, 260 N. W. 442; Alexander v. State, 20 Wyo. 241, 123 Pac. 68, Ann. Cas. 1915A, 1282. In Colorado the court assumes the existence of the writ without deciding definitely because of rejection of the application. Mandell v. People, 76 Colo. 296, 231 Pac. 199. In some of the jurisdictions the existence of the writ is determined because of statutory provisions, somewhat similar to our § 11,179 of the Comp. Laws, on the theory that unless abolished expressly the writ still exists. See Sanders v. State, 85 Ind. 318, 44 Am. Rep. 29; State v. Calhoun, 50 Kan. 523, 32 Pac. 38, 18 L.R.A. 838, 34 Am. St. Rep. 141. It may be doubtful if the writ could be used in this state in any event for, as stated in State v. Hayslip, 90 Ohio St. 199, 107 N. E. 335, in our Code of Criminal Procedure writs and pleas are designated and defined by statute just as crimes are designated and defined by statute and no provision whatever is made for such a writ.

In Boyd v. Smyth, 200 Iowa, 687, 205 N. W. 522, 43 A.L.R. 1381, and Coppock v. Reed, 189 Iowa, 581, 178 N. W. 382, 10 A.L.R. 1407, it is stated the code prescribes the method for correcting errors of fact through appeal and by no other method. In State v. Harper, 220 Iowa, 515, 258 N. W. 886, it is stated that common law proceedings not embraced in the code are not available. With us the code of criminal procedure of this state appears to provide a complete method of review by motion for a new trial, arrest of judgment or appeal. It is not claimed review was sought by any of these means.

It is conceivable that errors of fact not appearing on the record, such as the insanity of the defendant at the time of trial, might not

be brought to the attention of the court at that time nor be apparent to the court until after the expiration of the time for making a motion for a new trial, so that a question might 'arise whether such an' error could be corrected upon a motion for a new trial, or after sentence had been pronounced and judgment entered. In State v. ·Throndson, 49 N. D. 348, 191 N. W. 628, the question of the mental capacity of the defendant at the time he entered his' plea of guilty came before this court upon an appeal from an order denying his motion for new trial and at that time we considered the appeal as if the application for the new trial was before the trial court properly under the provisions of § 10,917 of the Comp. Laws. This statute limits the grounds for which a new trial may be granted, to certain cases only, but includes in subdivision 5 the situation where the court, "during the course of the trial, . . . has done or allowed any act in the action prejudicial to the substantial rights of the defendant."

The issue in the case cited was whether the court was justified in accepting the plea of guilty in view of the showing made of the defendant's mental condition. If such matters may be reviewed upon a motion for new trial it is clear the writ of coram nobis could not issue, at least during the time allowed to move for a new trial, even if the writ existed in this jurisdiction. But we need not speculate in this case. The solution is apparent upon the record.

· The application was .made to the District Court long after the court had lost jurisdiction of the case, after the judgment had been enforced and satisfied, after the defendant was dead, and on purely ex parte proceedings—no notice of any kind being given to the State. To grant such a writ now when the judgment has been enforced and satisfied would be to act in a moot matter. People v. Donahoe, 223 Ill. App. 277.

On November 19; 1931, the court made and entered an order vacating the judgment and sentence on the ground "that the defendant was sentenced as on a conviction for a second offense violation of the prohibition law, when as a matter of fact he had never theretofore been convicted of an offense against said law; and (2) that the defendant could not have been guilty of any crime at the time he pleaded guilty and was sentenced because of the fact that for a long time prior thereto

he had been so mentally incompetent as not to have been able to have committed a crime."

The question of the mental competency of the insured at the time the second offense was committed cannot be investigated here. So far as this case is concerned that fact was judicially determined by the judgment and this determination is conclusive here. In addition the first offense alleged was sufficient. His guilt was admitted by himself. In this there was no error of fact that he could have corrected by the means adopted. The writ would not lie to correct or change the effect of his own voluntary statements. The trial court that entered this order is the same court before whom the defendant appeared for sentence in the first case, if the record be correct. There could be no error of fact in the mind of the court of such nature as to justify the writ, for the court would know whether he passed sentence upon the defendant for the first offense, and as pointed out already whatever may have been the degree of competency of the insured at the time the court made this order the application is clearly an attempt to correct an alleged error of fact on the part of the court, occurring at the time of the first judgment and sentence, as well as subsequent proceedings.

The foregoing discussion with reference to the procedure involving the writ of coram nobis expresses the views of the writer only, the other members of the court deeming the matter unnecessary to refer to or to determine.

It must be clear that such proceedings were a nullity. The trial court had no jurisdiction to make and enter such an ex parte order. That the whole matter was a nullity was the apparent view of the trial court for in the order the court states, "Inasmuch, however, as this defendant has died long since, it appears to the Court that the whole matter presents but a moot question in any event, so far as this motion is concerned, and since this application is made ex parte, it ought not and cannot be held, in the opinion of this Court, to affect any vested or other rights of persons not parties to this proceeding, and is not intended to and does not foreclose the rights of any interested parties to contest any of the matters to which this order refers or appertains."

It will be noted also that the right of cancellation is not necessarily based upon conviction for engaging in the liquor traffic but on the fact

of engaging. So far as this action is concerned it is immaterial whether the defendant was sentenced in 1925. His own confession at that time, which is not disputed, shows he was engaging in the traffic at that time. There is nothing to show the defendant company knew of it until the incarceration in the penitentiary and it moved promptly at that time. The fact that premiums, ordinarily due, were tendered thereafter did not bind the company. The company refused to accept them as it had a right to do.

The case at bar was tried to the court without a jury. It is clear the judgment entered was based upon the theory that the insured was mentally incompetent at the time he committed the offense and at the time he was sentenced to the penitentiary and therefore was immune from punishment for the commission of the felony; and that in any event he had not been sentenced for a first offense. The court therefore assumed and determined that the defendant had no right to cancel the certificate. The judicial determination of the case wherein the insured was sentenced to the penitentiary could not be questioned in the way it was. That determination is final and binding in all of its implications, so far as this case is concerned, and in addition even if not actually sentenced for the first offense the voluntary confession of the insured, the deceased, is binding upon the beneficiary.

The plaintiff has no cause of action and therefore the judgment is reversed and the action dismissed.

CHRISTIANSON, Ch. J., and MILLER, HOLT and JANSONIUS, Dist. JJ., concur.

NUESSLE, MORRIS and SATHRE, JJ., being disqualified, did not participate, Hon. DANIEL B. HOLT, Judge of First Judicial District, Hon. FRED JANSONIUS, Judge of Fourth Judicial District, and Hon. HARVEY J. MILLER, Judge of Sixth Judicial District, sitting in their stead.