SALVATORE FRANCO V. STATE OF NEBRASKA.

FILED OCTOBER 2, 1915. No. 19152.

Criminal Law: NEW TRIAL: NEWLY DISCOVERED EVIDENCE. The statutes have been so construed as not to allow a new trial after the term in which judgment has been rendered in a criminal case as it is in a civil case, and when it is conceded by the state that facts exist, as disclosed by circumstances after the trial, which could not have been known at the trial, and which have a direct bearing upon the question of the defendant's guilt, and, if unexplained, render it improbable that the defendant is guilty, a new trial will be awarded.

ERROR to the district court for Nuckolls county: LESLIE G. HURD, JUDGE. *Reversed.*

*Louis J. Piatti, John D. Wear* and *John F. Moriarty,* for plaintiff in error.

*Willis E. Reed, Attorney General, Charles S. Roe* and *Harvey A. Brubaker, contra.*

SEDGWICK, J.

This defendant and one Antonio Turco were employed by the Nebraska Portland Cement Company at Superior as common laborers, and in the early morning of October 1, 1914, it is alleged the defendant killed the said Turco by shooting him with a revolver through the head. The shooting appears to have been conceded upon the trial.

The defense was that the defendant was insane and irresponsible. The trial resulted in a verdict of murder in the second degree, and the defendant was sentenced to 15 years in the penitentiary.

It is contended that the court erred in some of the instructions to the jury, but the principal contention is that the verdict is not supported by the evidence.

1. The second instruction given by the court upon its own motion was as follows: "To justify you in finding the defendant guilty of the crime of murder in the first degree as set out in the information, the state must establish and prove that the defendant, Salvatore Franco, on or about the 1st day of October, 1914, in the county of Nuckolls, and state of Nebraska, unlawfully, feloniously, forcibly, and purposely, with deliberate and premeditated malice, did assault one Antonio Turco by shooting him in the head with a pistol loaded with powder and leaden bullets, with the intention to kill and murder him the said Antonio Turco, and that as a result of said assault and wounds so inflicted by the defendant the said Antonio Turco, a human being, died."

The contention is that this instruction excluded the defense of insanity, and *Davis v. State*, 90 Neb. 361, is relied upon as supporting this contention. In that case the defense was insanity, and the court instructed the jury: "The jury is instructed that the law presumes that a person intends all the natural, probable and usual consequences of his acts; that when one person assaults another violently with a dangerous and deadly weapon, likely to kill, not in self-defense, or in defense of habitation or property, and not in a sudden heat of passion or sudden quarrel, and the life of the person thus assaulted is actually destroyed in consequence of such assault, then the legal and natural presumption is that death or great bodily injury was intended, and in such case the law implies malice and such killing would be murder."

The circumstances attending the homicide were proved by eye-witnesses, and the court, with the exception of one judge, considered that in such case it was erroneous to in-

struct the jury that the law implies malice, under the authority of *Vollmer v. State,* 24 Neb. 838, *Lucas v. State,* 78 Neb. 454, and *Kennison v. State,* 80 Neb. 688. Three of the members of the court thought that this error was prejudicial to the defendant so as to require a reversal. A majority of the court, however, concluded that the error was not so prejudicial as to require a reversal, but the judgment of the district court was reversed for another reason. Three of the judges who considered the errors in the instruction quoted so prejudicial as to require a reversal considered that the defense of insanity was wholly excluded by this instruction, because it told the jury that, under the facts recited in the instruction, "the law implies malice and such killing would be murder." In the case at bar no such objection can be urged to the instruction quoted. The jury were told that, to justify them in finding the defendant guilty, they must find certain facts, one of those facts being that the act was done "with deliberate and premeditated malice," and in another instruction the court told the jury: "As you have been told, it is essential to the crime of murder, either in the first or second degree, that it must be done intentionally, and it follows that the mind must have been capable of forming the intent and carrying it into execution, and of knowing the nature and effect of the act committed, in order to make one charged with crime criminally guilty; * * * and, even though you may be satisfied that the defendant committed the act charged against him in the information, yet, unless you are further satisfied beyond a reasonable doubt, upon a view of the whole evidence, that at the time the defendant committed the assault he had a sufficient degree of reason to know and was capable of understanding what he was doing, and had sufficient understanding to know that his act was wrong, then the law will not hold him criminally responsible for what he did, and, unless you are so satisfied beyond a reasonable doubt, you should acquit him of every degree of the offense charged." This language was not inconsistent with the instruction that, to justify a finding of guilty, they must find that the act was done with

deliberate and premeditated malice. It especially tells the jury that there could be no deliberate and premeditated malice if the defendant was insane at the time.

2. The court also instructed the jury: "It does not devolve upon the defendant to prove by a preponderance of the evidence that he was insane at the time of the offense charged, nor that he is insane now, but if the evidence upon that subject is sufficient to raise a reasonable doubt, as defined in these instructions, as to his sanity, then he should be acquitted." The words "nor that he is insane now" were, of course, unnecessary in this instruction. It would have been perhaps better to have omitted them, but we cannot see how that could have prejudiced the defendant. Also the expression, "if the evidence upon that subject is sufficient to raise a reasonable doubt," might provoke technical criticism. The evidence of insanity might be sufficient to raise a reasonable doubt, although the whole evidence, taken together, was sufficient to remove that doubt. This language was favorable to the defendant. It might lead the jury to think that, if the defendant had introduced sufficient evidence to raise a doubt as to his sanity, no counter evidence of the state would be availing.

3. Whether the evidence is sufficient to support the conviction is a more serious question. It appears that the defendant had been engaged in this employment for about three months; that he and the deceased were of the same nationality and had been friends during that time. During the day prior to the shooting, an altercation had arisen between them, and in that altercation the deceased, who was an older man than the defendant, had used great violence against the defendant, striking several blows with a shovel, one upon the defendant's head, which was so serious as to render the defendant temporarily unconscious. The defendant, after the shooting, escaped, and for nearly four days wandered around, until he was found on the fourth day some 40 miles from the scene of the tragedy. Soon after he received the blow upon the head he complained of being sick, and only worked about a half hour that afternoon. There was other evidence tending to prove

that he was so affected by the injuries he had received as to be incapable of self-control and irresponsible for his acts. The evidence was conflicting. The jury found against the defendant, and the trial judge, after a careful and apparently fair trial of the defendant, refused to set aside the verdict, and sentenced the defendant, as already stated. There is in this case, however, an unusual and important consideration which, in view of the inconclusive character of the state's evidence, leads us to conclude that this judgment should be set aside. Soon after the trial, the defendant was taken to the penitentiary, and the next day he was examined by the prison physician and found to be insane, and by order of the board of control was transferred to an asylum. In the asylum an operation was performed to relieve the effects of the injury to his skull caused by the blow he had received at the hands of the deceased, and it was then determined that he was insane as the result of this blow upon the head. While these matters that took place after the trial are not shown by the record, they were stated in court upon the argument and concurred in by the attorneys for the state.

In the early case of *Bradshaw v. State,* 19 Neb. 644, this court held that the statute authorizing a new trial after the term for newly discovered evidence did not apply to criminal cases. Judge Maxwell, who wrote the opinion, expressed regret that such was the case, in these words: "The writer desires to add that the rule permitting a petition for a new trial to be filed at any time within one year from the rendition of the judgment in civil actions should, where there is newly discovered evidence, the effect of which is to cast doubt on the correctness of the verdict or show the defendant's innocence, be extended to criminal cases. Such a rule, in cases of conviction upon circumstantial evidence, if properly guarded and applied, would throw an additional safeguard around the innocent, and tend to the promotion of justice; but in the absence of legislation to that effect the courts are without authority in the premises." Since the legislature has taken no action in that regard, this court reluctantly followed

that decision in *Hubbard v. State,* 72 Neb. 62, and in *Evers v. State,* 87 Neb. 721. In the latter case the above suggestion of Judge Maxwell is quoted. If an application for new trial after term was allowed in criminal as in civil cases, there can be no doubt that under the circumstances admitted in this case that remedy would be effective. If the trial had been delayed for a few days and the effects of the defendant's injuries could have been shown, it is at least probable that the result of the trial would have been different. The attorneys for the state were in the line of duty in informing the court of these facts. We cannot affirm a judgment that is conceded to be unjust.

The judgment of the district court is reversed and a new trial awarded.

REVERSED.

LETTON, J., concurs in conclusion, for other reasons.

ROSE, J., dissenting.

HAMER, J., not sitting.