CARL C. CARLSEN v. STATE OF NEBRASKA.

FILED MAY 17, 1935. No. 29439.

*Frank A. Peterson, Walter D. James* and *Perry, Van Pelt & Marti,* for plaintiff in error.

*William H. Wright, Attorney General,* and *Edwin Vail, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

DAY, J.

This is an appeal from an order of the Lancaster county court denying an application for a writ of error *coram nobis*. Carlsen was tried before and convicted by a jury in the district court of the crime of forgery. A motion for a new trial was overruled, and he was sentenced to the penitentiary and to pay a fine. He prosecuted a proceeding in error to this court, the result of which was an affirmance of the judgment. *Carlsen v. State,* 127 Neb. 11. He then applied to the supreme court of the United States for a writ of certiorari, which was denied. Thereafter he made application to the trial court for an ancient common-law writ of error *coram nobis*. The trial court sustained the state's demurrer to the petition for that it did not state facts sufficient to justify the issuance of the writ of error *coram nobis*. Our statutes do not provide for such a writ, and there is no provision expressly abolishing the common-law writ.

In 1855 the first legislature of the territory of Nebraska adopted as a Civil and Criminal Code parts of the Code of Iowa. This Code provided for a writ of error *coram nobis*. Section 540 provided: "Any person aggrieved by the judgment of the district court by reason of any material error in fact may within one year after the rendition thereof obtain from the clerk of the court which rendered the judgment a writ of error *coram nobis* returnable at the next term of said court." Laws 1855, p. 108. This would appear to be a part of the Civil Code applicable to civil actions. This section was recently discussed in *Boyd v. Smyth,* 200 Ia. 687. It was there said in an opinion written by Albert, J.: "The provisions of this chapter are broad enough to cover all cases arising which seek to vacate or modify a judgment, but this is, and always has been, a chapter in the Code of Civil Procedure, and has

afforded a remedy in all instances where a judgment could be vacated or modified."

In this connection, section 524 of the Criminal Code, Laws 1855, p. 292, provides: "The only mode of reviewing a judgment or order in a criminal action is by a writ of error as prescribed in this chapter." Then follow specific provisions as to writs of error, and a writ of error *coram nobis* is not a prescribed remedy. This would seem to be an expression of legislative intent to abolish the writ as to criminal cases.

However, in 1857, the territorial legislature repealed the entire Civil and Criminal Code previously adopted from Iowa by the following act:

"Section 1. Be it enacted by the council and house of representatives of the Territory of Nebraska, That an act entitled 'An act adopting certain parts of the Code of Iowa,' approved March 16, 1855, and also an act entitled 'An act relative to criminal laws,' approved March 15, 1855, be and the same are hereby repealed.

"Section 2. This act to take effect and be in force from and after its passage." This act passed the house by two-thirds vote over the governor's veto, 24 to 2, and passed the council by a vote of 12 to 1 over the governor's veto. See Laws 1857, p. 137. While the date of the passage of this repealing act is not given, on page 295, Laws 1857, appears this joint resolution: "Resolved, by the council and house of representatives of the Territory of Nebraska, that all laws passed at the present session of the general assembly shall take effect on the first day of June next, unless otherwise provided in the acts passed. Approved February 13, 1857."

The supreme court of Iowa in *Boyd v. Smyth, supra,* held that in a statutory revision the parts of the original omitted are to be considered annulled. Since the Iowa legislature in the adoption of revised statutes omitted the chapter relating to the writ of error *coram nobis*, it was determined that the remedy had been abolished.

But the legislative history in Nebraska is not like that of Iowa. As stated, the entire Code, both Civil and

Criminal, was abolished in 1857. The statute was not revised. It was not until November 1, 1858, that a new Code was approved. This new Code did not provide for writ of error *coram nobis* in either civil or criminal cases. It did not specifically abolish the writ, but was silent as to it. It did not provide, as the former Code, that the only mode of reviewing a judgment or order in a criminal case was as provided by the Code. It did not provide for a review of criminal cases by a writ of error. There is nothing in this Code which can be said to abolish the writ of error *coram nobis*. The Code of 1858 was superseded by the Revised Statutes of 1866 which were effective when Nebraska was admitted as a state to the Union in 1867. The chapter entitled Schedule, section 1, Constitution of 1866, provided: "That no inconvenience may arise from the change of territorial government to a state government, it is declared that all rights, suits, actions, prosecutions, judgments, recognizances, claims, and contracts, both as respects persons and bodies corporate shall continue and be enforced, as if no change had taken place, and all laws now in force shall remain in force until altered, amended, or repealed by the legislature."

Thus it is evident not only that the common-law writ of error *coram nobis* was not expressly abolished by statute, that the statutes negative any such legislative intent. The Revised Statutes of 1866, ch. 7, sec. 1, provided: "So much of the common law of England as is applicable, and not inconsistent with the Constitution of the United States, with the organic law of this territory, or with any law passed or to be passed by the legislature of this territory, is adopted, and declared to be law within said territory." This statute has never been repealed and is now section 49-101, Comp. St. 1929. The legislature by the adoption of the Revised Statutes of 1866 made a further declaration, as follows: "If a case ever arise in which an action for the enforcement or protection of a right, or the redress or prevention of a wrong, cannot be had under this Code, the practice heretofore in use may be adopted so far as may be necessary to prevent a failure of justice." Rev.

St. 1866, tit. 29, ch. 6, sec. 901. This has never been amended or repealed and is now section 20-2225, Comp. St. 1929. These territorial statutes by the adoption of the Constitution of 1866 became the law of the state. The new Constitution provided: "All courts shall be open, and every person, for any injury done him in his lands, goods, person, or reputation, shall have remedy by due course of law, and justice administered without denial or delay." Const. 1866, art. I, sec. 9. This section now appears as section 13, art. I, Const. 1920. These statutory and constitutional provisions indicate a continuing determination to provide a remedy for every wrong. In *Engles v. Morgenstern*, 85 Neb. 51, it was held that the foregoing statutes and the constitutional provision established the right to review final orders of justices of the peace and other inferior tribunals notwithstanding the repeal of the statute authorizing such review. A similar constitutional provision has been held to require a remedy as a part of the "due course of law" guaranteed by the Constitution. *State v. Killigrew*, 202 Ind. 397, 74 A. L. R. 631. It has been effectually used where no other form of judicial relief existed. *State v. Calhoun*, 50 Kan. 523.

But these provisions of the Constitution and the statutes do not apply where another remedy is provided by statute (*Genau v. Abbott*, 68 Neb. 117), or where the statutory remedy is lost by laches (*Flint v. Chaloupka*, 81 Neb. 87). Consequently, it is argued by the state that our statutory Code of Procedure is so comprehensive as to displace the common-law writ of error *coram nobis*. Does the statute provide an adequate remedy to correct an error of fact, when the judgment has become final? Sections 29-2101, 29-2102, and 29-2103, Comp. St. 1929, provide for a motion for new trial as follow:

Section 29-2101: "A new trial, after a verdict of conviction, may be granted on the application of the defendant for any of the following reasons affecting materially his substantial rights: First. Irregularity in the proceedings of the court, or the prosecuting attorney, or the

witnesses for the state, or any orders of the court, or abuse of discretion, by which the defendant was prevented from having a fair trial; Second. Misconduct of the jury or the prosecuting attorney or of the witnesses for the state; Third. Accident or surprise which ordinary prudence could not have guarded against; Fourth. That the verdict is not sustained by sufficient evidence or is contrary to law; Fifth. Newly discovered evidence material for the defendant which he could not with reasonable diligence have discovered and produced at the trial; Sixth. Error of law occurring at the trial."

Section 29-2102: "The causes enumerated in subdivisions two, three and five of the next preceding section must be sustained by affidavits showing their truth, and may be controverted by affidavits."

Section 29-2103: "The application for a new trial shall be by motion upon written grounds, filed at the term the verdict is rendered, and shall, except for the cause of newly discovered evidence material for the party applying, which he could not with reasonable diligence have discovered and produced at the trial, be within three days after the verdict was rendered, unless unavoidably prevented. In assigning the grounds of such motion, it shall be sufficient to assign the same in the language of the statute, and without further or other particularity."

The statutory provisions for the vacation or modification of judgments in civil actions are much more numerous than in criminal cases. Comp. St. 1929, secs. 20-2001 to 20-2009. These provisions are so extensive and liberal that the argument of the state would be persuasive in a civil case that the provisions of the Code have in fact abolished the writ of error *coram nobis,* because a remedy is provided for every wrong. It is interesting to note, although of little importance here, that the only provision for a writ of error *coram nobis* in our state was contained in the Civil Code, and when it ceased to be a part of the Code, it was replaced by statutory remedies to serve substantially the same purpose. But the provisions of the

Code for vacating judgments after term are only of incidental interest here. They are not applicable to a criminal case.

In *Bradshaw v. State* (1886) 19 Neb. 644, Bradshaw was found guilty of murder and sentenced to life imprisonment. Upon a review by this court, the judgment was affirmed. Later a motion for new trial was filed in the district court upon the ground of newly discovered evidence and many affidavits were filed which, if true, at least cast a doubt on the correctness of the verdict. It was held that the grounds upon which a new trial might be granted in a criminal case must be filed within three days and at the same term unless unavoidably prevented. It was conceded by attorneys for Bradshaw that the provisions of the Criminal Code did not authorize them to file a motion for new trial after two years, but they claimed relief under the provision of the Civil Code. The court held that the provision of the Civil Code was not applicable. The opinion was written by Maxwell, C. J., who said: "The rule permitting a petition for a new trial to be filed at any time within one year from the rendition of the judgment in civil actions should, where there is newly discovered evidence, the effect of which is to cast doubt on the correctness of the verdict or show the defendant's innocence, be extended to criminal cases. Such a rule, in cases of conviction upon circumstantial evidence, if properly guarded and applied, would throw an additional safeguard around the innocent, and tend to the promotion of justice; but in the absence of legislation to that effect the courts are without authority in the premises." Almost fifty years have passed since this judgment was rendered, and the legislature has not provided a statutory remedy for such a case.

In *Hubbard v. State* (1904) 72 Neb. 62, there had been a conviction for statutory rape. The judgment was affirmed when reviewed by this court. Later Hubbard commenced a suit in equity for the purpose of securing a new trial for that the conviction was secured by means of perjured testimony. We quote extensively from the syllabus to

demonstrate that neither the statute nor equity affords remedy to one wrongfully convicted except a motion for new trial filed within three days and at the same term:

"A court of equity will not interfere for the purpose of granting a new trial in a criminal case on the ground of newly discovered evidence.

"The district court possesses no inherent or common-law power to grant new trials in criminal cases, on the ground of newly discovered evidence, at a subsequent term to that at which a verdict of guilty was rendered."

"The provisions of section 318 of the Code, authorizing the granting of new trials in civil actions at a subsequent term to that at which the judgment was rendered, on the ground of newly discovered evidence, are not applicable to the granting of new trials in criminal cases." (Section 318 is now section 20-1145, Comp. St. 1929.)

Expressions in opinions must be interpreted with reference to the facts and issues determined therein. *Schwanenfeldt v. Chicago, B. & Q. R. Co.*, 80 Neb. 790; *Perkins v. Great Central Transport Corporation*, 262 Mich. 616; *Schoeneman Lumber Co. v. Davis*, 200 Ia. 873.

The issues decided by *Hubbard v. State, supra,* are that neither the statutes nor equity afford one a remedy by new trial where newly discovered evidence casts serious doubt on the correctness of the verdict. There is no statutory or equitable remedy in our judicial procedure for one convicted by fraud or mistake except by a motion for new trial, within three days, at the same term of court.

In *Simmons v. State,* 111 Neb. 644, opinion by Good, J., it was held that the district court does not have jurisdiction to grant a new trial in a criminal case on the ground of newly discovered evidence at a subsequent term to that at which the verdict of guilty was returned—citing *Hubbard v. State, supra; Evers v. State,* 87 Neb. 721; *Fouse v. State,* 83 Neb. 258; *Dodge v. People,* 4 Neb. 220; *McCoy v. State,* 110 Neb. 360. It cannot be gainsaid, in view of these authorities, that the Code does not provide a remedy to one wrongfully convicted, and the argument of the state that it does is untenable.

In *Evers v. State, supra,* it was held that a motion for new trial on the ground of newly discovered evidence could not be sustained under section 318 of the Code (now section 20-1145, Comp. St. 1929). It was specifically held that "The district court has no jurisdiction to grant a new trial, in a criminal case, upon application by petition filed after the term of the trial." This decision was based on *Hubbard v. State, supra,* that the statute providing for new trial in civil cases did not apply to criminal cases. Judge Sedgwick, the author of the court's opinion, expressed his disapproval of the fact that the statute did not provide a remedy.

Later, in 1915, Judge Sedgwick wrote the opinion in *Franco v. State,* 98 Neb. 746. In this case, two men had a quarrel and one shot the other. The case was brought to this court on a writ of error, which makes it different from the other cases cited. It appeared, outside of the record, after conviction, when the defense was insanity, that in the altercation the defendant's head had been injured by a blow administered by the man who was killed. The defendant's insanity was noted at once by a physician at the penitentiary, and he was removed to the state hospital where an operation restored him to sanity. The attorney general admitted the fact, in open court, that the defendant was insane at the time of the trial. The court reversed the judgment and reversed the case, because "we cannot affirm a judgment that is conceded to be unjust." No comment is necessary upon this opinion, except that it sustains the proposition that there is no statutory remedy provided for one wrongfully convicted of a crime. It cannot be said to support the contention that the court has held that the writ of error *coram nobis* exists, but it does demonstrate a situation where the old writ would perform a very useful service.

It has been suggested that the defendant has a remedy in the pardoning power existent in this state. This has been suggested in a number of cases, notably *Hubbard v. State, supra,* in which it was said: "The remedy is an appeal to the executive, who is clothed with the pardoning

power." Quoting from Judge Sedgwick in *Evers v. State, supra*: "It is, of course, not intended by the Constitution that the pardoning power should review and correct the decisions of the courts. The fact of the defendant's guilt or innocence of the crime with which he is charged should be finally settled by the courts, where the evidence can be received and weighed under the well-established rules of law, and where it is supposed that the truth can be ascertained with as much certainty as human imperfection will admit." The pardoning power serves the state a different purpose. The pardoning power is not a corrective judicial process to remedy a wrong. *Sanders v. State*, 85 Ind. 318.

In order to complete the process of elimination, it should be noted that the writ of habeas corpus does not afford a corrective judicial process to remedy an error of fact, at the trial, without which a conviction would not have resulted. Habeas corpus is not a proper remedy to secure release from prison of one sentenced upon a plea of guilty induced by fear. *Darling v. Fenton*, 120 Neb. 829. Habeas corpus is not a proper remedy to release one from prison who has been wrongfully convicted. Habeas corpus is not recognized as a remedy to review a judgment. It cannot take the place of a writ of error.

It has been suggested to this court in several recent cases that the common-law writ of error *coram nobis* exists in this state. The first mention of the writ by the court was in a civil case, *Jennings v. Simpson* (1882) 12 Neb. 558, although the relief granted in that case depended "upon the general powers of a court of equity." Later, in 1903, an application for a writ of error *coram nobis* was presented at chambers to J. J. Sullivan, C. J., who called to his assistance Roscoe Pound and John H. Ames, then commissioners of the court. This is reported in an appendix at 64 Neb. 885, by the deputy reporter, who states that the "chief justice, after consultation, said that they were all of the opinion that the petitioner was invoking a power which did not exist in the full bench, and, *a fortiori*, in a judge at chambers." While not entitled to the

dignity of a precedent because of the informal manner in which it was reported and because it was not the judgment of the court, it is nevertheless interesting as an opinion of these distinguished judges.

Then, in *Cole v. State* (1920) 104 Neb. 780, upon an application for a writ of error *coram nobis*, it was not decided if the right existed, but was denied because the petition did not allege specific facts which, if known at the time judgment was rendered, would have prevented its rendition.

Similarly, in *State v. Boyd* (1928) 117 Neb. 320, the court held: "Even if the right to a writ of error *coram nobis* exists in this state, which is not decided, a petition, which as ground for its issuance states only a fact which was known to the party applying before the judgment attacked was rendered, is insufficient." These cases do not determine that the writ exists. The opinions specifically state that the question is not decided, and this court may now determine the question for the first time, unhampered by previous decisions.

The conclusion follows, we think, that there is no corrective judicial procedure prescribed by statute to remedy a wrongful conviction which would not have occurred except for an error of fact upon the trial. Equity does not interfere in a criminal case to vacate such a judgment. Habeas corpus does not serve this purpose, and the pardoning power which is vested in an administrative board is not adequate, and, moreover, is not a judicial process.

Has this state failed to provide a corrective judicial process to remedy such a wrong when discovered by reasonable diligence? We are unanimously of the opinion that it has not. Section 20-2225, Comp. St. 1929, heretofore quoted, says that, if a case arise to prevent a wrong, for which the Code does not provide, the former practice may be adopted to prevent a failure of justice. Section 49-101, Comp. St. 1929, also quoted herein, provides that so much of the common law of England as is applicable and not inconsistent with our Constitution and laws is adopted. At the time of the enactment of these

statutes, *coram nobis* was a recognized writ, the purpose of which was to correct an error of fact. It had fallen into disuse and is said to have thus become obsolete, but it existed nevertheless. It has been effectually resorted to in criminal cases where no other form of judicial relief existed. *Sanders v. State,* 85 Ind. 318; *State v. Calhoun,* 50 Kan. 523; 2 R. C. L. 305, sec. 259. In *In re Ernst,* 179 Wis. 646, it was held that the common-law writ of error *coram nobis* to permit the court in which the action was tried to correct errors of fact not appearing in the record and not reviewable by the ordinary writ of error is in force in that state, under section 13, art. XIV of the Constitution. The constitutional provision mentioned is: "Such parts of the common law as are in force in the territory of Wisconsin, not inconsistent with this Constitution, shall be and continue part of the law of this state until altered or suspended by the Constitution or the legislature." This language is so similar with our statutory provision as to indicate a common ancestor.

The necessity for this state to provide a corrective judicial remedy available to one wrongfully convicted is made imperative by section 13, art. I of the Constitution, which provides that every person for any injury done him in his lands, goods, person, or reputation shall have a remedy by due course of law. The right to apply for a pardon to an administrative board does not meet the requirements of the constitutional provision guaranteeing a remedy for an injury by due process of law.

In a consideration of this case, the recent decision of the supreme court of the United States in *Mooney v. Holohan,* 294 U. S. 103, is of especial interest. Mooney sought to obtain leave to file a petition for an original writ of habeas corpus for that he was unlawfully restrained of his liberty by the state of California. He alleged that he was convicted as a result of perjured testimony knowingly used by the prosecuting officers, who also suppressed evidence which would have impeached and refuted it; that reasonable diligence would not have discovered the evidence which subsequently developed that

the testimony against him was perjured; that the state of California had failed to provide any judicial procedure to remedy the wrong to him. It was held that, where one was convicted by testimony known to the prosecuting officers to be prejured, and was deprived of his liberty thereby, the state's failure to afford a corrective judicial process to remedy the wrong when discovered by reasonable diligence would constitute deprivation of liberty without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States.

We are not enthusiastic about revivifying an ancient remedy of the common law. It would seem better that the Code should provide a modern process more in keeping with the spirit of progress. Relief is provided in civil cases. But the legislature has not provided such in criminal cases, although several decisions covering a period of fifty years have directed attention to the omission in the statute. But the objection to the ancient lineage of the common-law writ of error *coram nobis* is overcome by the necessity to resort to it as a present remedy for a wrong when no other exists. We are constrained to hold that Nebraska has provided a corrective judicial process in a case of wrongful conviction upon an error of fact. The statutes and the Constitution retain common-law remedies unless the statute provides another one. The writ of error *coram nobis,* to bring into the record facts which were unknown to the defendant at the time of trial through no lack of reasonable diligence on his part which, if known at the time of the trial, would have resulted in a different judgment, exists in this state under section 49-101, Comp. St. 1929.

The common-law writ of error *coram nobis* has been the subject of some discussion by the courts. It was a remedy of the common law, infrequently used, and has been supplanted by statutory remedies in England and many of the states. A review of the cases reveals that the courts generally are doubtful of its existence and uncertain of the scope of its application. This court has upon two occasions declined to determine the existence or the

application of the remedy because unnecessary to a decision of the cases. *State v. Boyd,* 117 Neb. 320, 58 A. L. R. 1283; *Cole v. State,* 104 Neb. 780. Professor Lester B. Orfield has written several articles upon the history, the present existence, the scope and the application of the writ. He has collected and discussed the authorities, including very recent decisions of American courts, in a manner that has been very helpful at times. 20 Virginia Law Review, 423; 10 Neb. Law Bulletin, 314; 11 Neb. Law Bulletin, 421.

In order to decide this case, it is necessary to determine the scope of the writ of error *coram nobis* only so far as applicable herein. It is stated in 2 R. C. L. 307, sec. 262: "The purpose of the writ of *coram nobis* is to bring before the court rendering the judgment matters of fact which if known at the time the judgment was rendered would have prevented its rendition." Upon this broad general principle the application of the applicant, Carlsen, is based.

His petition alleges that he was convicted of forging interest coupons; that the conviction was obtained and affirmed on the theory that the execution of said interest coupons had not been authorized by Mary A. McLoughlin and Thomas J. McLoughlin for the purpose of extending the bonds; that the testimony of the McLoughlins supporting this conclusion of fact was as follows: "Q. Did any one ever ask you for authority to sign your name to that exhibit? A. Not that I remember of. Q. Did any one ask you for authority to use your name on exhibit No. 4? A. No, sir. Q. And who signed exhibit No. 4A? A. I did. Q. And who else? A. My wife. Q. Did any one ever ask for an extension after that date? A. Not that I remember of. Q. Would you remember it if they did? A. I believe so. Q. Did you ever give any one an extension after that date? A. No, sir." That the above and foregoing statement, that the loan was not extended and that said coupons herein were not authorized, was untrue; that the said witness, Thomas J. McLoughlin, will now testify, and his affidavit is attached and made a

part of the petition herein, that he was mistaken at the time of the trial when he testified as above related; that at the time he testified he had in mind and assumed that such extension and such authority to execute said coupons had to be in writing; that Thomas J. McLoughlin did in fact authorize R. G. Sutton and Vern Hicks to secure an extension of the loan on behalf of himself and his wife, Mary A. McLoughlin, and to execute the coupons in question. The affidavit of R. G. Sutton is attached and made a part of the petition by reference in which he states that on behalf of the McLoughlins he authorized Carlsen to extend the loan and execute the coupons.

The petition further alleges that Mary A. McLoughlin and Thomas J. McLoughlin were unfriendly to him prior to and during the trial; that the defendant was never able to secure any information which would permit him or his counsel to disprove the testimony of Mary A. McLoughlin and Thomas J. McLoughlin until October 27, 1934, prior to the filing of the petition herein on November 1, 1934; that the defendant had never been charged with a crime before, and that he was confused and embarrassed to the point where his mind failed to function; that he was not able to recall instances which he now realizes would have been material to his defense.

The petition further alleges that Carlsen "now stands convicted of having committed a crime, when the witness upon whose testimony reliance is placed admits that said testimony was given at a time when the witness did not recall the extension agreement and at a time when he misunderstood the purport of the questions propounded to him; that to permit said judgment of conviction to stand amounts to a fraud upon the rights of the defendant." To this petition, the state filed a demurrer, "for the reason that said petition does not state facts sufficient to justify the issuance for such writ of error *coram nobis.*" The petition, the demurrer, and the order of the trial court constitute the entire record before us for review.

Assuming the truth of the allegations of fact well pleaded in the petition that Carlsen was convicted upon

testimony of witnesses who now state that they were mistaken in the import of their testimony in that they had a mistaken notion that the request for an extension and the authority to execute the interest coupons was required to be in writing, Carlsen now attempts to benefit by evidence that he was authorized to execute the coupons. This evidence, if true, was known to him at the time of the trial. A petition for a writ of error *coram nobis* is insufficient which, as a ground for its issuance, alleges only an error of fact which was known to the petitioner before the questioned judgment was rendered. *Coram nobis* does not lie to bring into the record facts known to petitioner before judgment. *State v. Boyd,* 117 Neb. 320. The reasons given in the foregoing case are cogent and persuasive. They are equally applicable to the situation here. If one negligently and intentionally fails to challenge the court's attention to facts within his knowledge, he cannot expect to be relieved of the consequences. 16 C. J. 1327. *Sanders v. State,* 85 Ind. 318, the most widely cited case on this subject, announces this rule at an early date, and lately, *Berry v. State,* 202 Ind. 294, adheres to the rule. See, also, *People v. Ramey,* 135 Cal. App. 573; *Carraway v. State,* 167 Miss. 390; *Keane v. State,* 164 Md. 685.

This petitioner attempts to excuse his failure to bring this fact to the attention of the court by pleading (1) that the witnesses were hostile to him, and (2) that because of the worry of the trial he forgot about the incident. He was on trial for forgery, and the question of authorization, if any, was important. While this application must be determined solely on the petition, the demurrer, and the judgment, an examination of the opinion, a part of which is pleaded here, reveals that it was sought to prove authority to sign the McLoughlin's names to the coupons from the terms of the original instrument. Whether the writ of error *coram nobis* lies as to issues that were litigated at the time is expressly not decided here. The excuse pleaded for failure to produce the evidence is not sufficient. True there are decisions

to the effect that *coram nobis* is a proper remedy for one convicted of a crime while insane. *Hodges v. State,* 111 Ark. 22; *Hawie v. State,* 121 Miss. 197, 10 A. L. R. 205. But an examination of these and other cases recognizing the applicability of *coram nobis* to such a situation reveals that one must be in such a mental condition as to be incapable of appreciating the importance of his trial and unable to properly prepare for it to avail himself of this remedy. If one is so mentally incompetent that he does not comprehend the peril he is in, he ought not to be tried. One who has become insane after the commission of a crime ought not to be tried for the offense during the continuance of the disability. Comp. St. 1929, sec. 29-1821. The allegations that the state's witnesses were hostile to him and that the worry incidental to the trial caused him to forget do not excuse the intentional or negligent omission to offer evidence of facts known to him at the time of the trial. The allegations do not bring the case at bar within the facts of *Franco v. State,* 98 Neb. 746, even if the reasoning of the case were applicable here. Franco was insane. Neither Carlsen nor his attorneys have alleged as a fact that he is insane. Until he does so plead, it is unnecessary for this court to consider the availability of the writ of error *coram nobis* as a remedy in such a case.

Lastly, the petition does not plead facts sufficient to sustain a charge of fraud on the part of the prosecuting officers of the state. The allegation in the petition following a recital of facts heretofore discussed states "that to permit said judgment of conviction to stand amounts to a fraud upon the rights of the defendant." This pleads a legal conclusion which is not admitted by demurrer. The conclusions of the pleader are not admitted by demurrer. *Dodson v. Woolworth Co.,* 118 Neb. 276; *Busboom v. Schmidt,* 94 Neb. 30. No fraud is admitted by the demurrer except that which is established by facts well pleaded. The argument in the reply brief is established by facts well pleaded. The argument in the reply

brief based upon *Mooney v. Holohan,* 294 U. S. 103, is extravagant and not supported by the facts pleaded. A general demurrer admits facts well pleaded. *Wright v. Schram,* 121 Neb. 775.

In conclusion, the writ of error *coram nobis* is rather more limited than formerly as a common-law remedy. It is never used where the Code provides a remedy. It is only available where there is no other remedy for a wrong. It is consequently very limited in scope. It might well be abolished by statute and a remedy provided by the Code. Its purpose is not, and never was, to permit a defendant to retry his case again and again. But, as pointed out heretofore, in certain cases, it provides a corrective judicial process that the Constitution guarantees shall not be denied.

The judgment of the trial court was a proper one and should not be disturbed.

AFFIRMED.