**HAWK v. OLSON, Warden.**

Civil Action No. 549.

District Court, D. Nebraska,
Lincoln Division.

June 5, 1946.

C. E. Sanden, of Lincoln, Neb., for petitioner, by appointment of the court.

Walter R. Johnson, Atty. Gen. of Nebraska, Robert A. Nelson, Asst. Atty. Gen. of Nebraska, and H. Emerson Kokjer, Deputy Atty. Gen. of Nebraska, for respondent.

DELEHANT, District Judge.

The vital question of this court's jurisdiction is the subject of this memorandum in a proceeding instituted here by the petitioner to obtain his release from the Nebraska state penitentiary in which he is, and for nearly ten years has been, confined under state process pursuant to a sentence and commitment of the District Court of Douglas County, Nebraska. His petition, tendered to the court somewhat earlier, was filed on March 26, 1946, in accordance with an order granting him leave to proceed in this court in forma pauperis and designating counsel to represent him.

Reflecting an acknowledged doubt on the court's part, respecting jurisdiction, that order directed that cause be shown why a writ should not issue, and contained the following paragraph:

"That the respondent be and he hereby is ordered to show cause in writing duly served on the attorney for the petitioner and filed herein on or before April 15, 1946 (or if an amended petition be filed by the petitioner, in pursuance of the permission foreshadowed by the last preceding paragraph, then on or before the 14th day after the filing herein of said amended petition) why a Writ of Habeas Corpus should not be issued as prayed, setting out in his re-

turn hereto an adequate showing as to the legal authority, if any, under which the petitioner is held in custody with any pertinent facts showing the lawful justification for such custody; that in and as a part of said showing of cause, the respondent is ordered specifically, but not exclusively or by way of limitation, to address himself to the question of this court's jurisdiction insofar as, and to the extent that, such jurisdiction is dependent upon the exhaustion by the petitioner of the remedies accorded to him under the laws of the state of Nebraska, and, if in that behalf the respondent shall contend that the petitioner has not exhausted the remedies available to him in the state courts of Nebraska, to set out specifically what procedure or remedy is available to the petitioner which he has not exhausted; and if the respondent shall contend that the writ of error coram nobis is available to the petitioner, to allege and set out whether, under the laws and in the procedure of the state of Nebraska, the statute of limitations bars the petitioner from obtaining relief in the way of such writ;"

The Attorney General of Nebraska as counsel for the respondent, by way of response, tendered a showing of cause dealing solely with the merits of the petitioner's claim, and taking no position upon the issue of jurisdiction 'or upon the underlying question of the petitioner's previous exhaustion of the remedies available to him under the laws of Nebraska. That action on his part was not censurable, regardless of the opinion, if any, upon the jurisdictional question which he may have entertained.

The court, thereupon, being satisfied, first, that Hawk v. Olson, 66 S.Ct. 116, 90 L.Ed. ——, had conclusively determined in the petitioner's favor, the adequacy of his averments in his present petition (essentially indistinguishable from those before the Supreme Court of the United States in Hawk v. Olson, supra) to support a hearing upon their merits in the proper court; and secondly, that Hawk v. Olson, Neb., 22 N.W.2d 136, with equal finality had determined that habeas corpus is not the proper remedy within the Nebraska practice to present the issues on which he

basically relies; and, being tentatively of the opinion (vide infra) that, in the light of the probably pertinent decisions of Nebraska's Supreme Court, the petitioner was necessarily beyond the protection of the writ of error coram nobis, or of a statutory application for a new trial after adjournment of the term in which he was convicted (neither of which the petitioner claims ever to have sought in the state courts), resolved in the petitioner's favor its then existing doubts upon the last point and granted a writ returnable at 9:30 a. m., on April 29, 1946. Imperative commitments of the court and counsel prompted counsel to request, and the court to confirm, June 12, 1946, as the date for the trial upon the merits of the writ. No other presently essential feature is involved in the several filings in the case itself.

But an intervening deliverance by the Supreme Court of the United States, Woods v. Neirstheimer, 66 S.Ct. 996, sharply challenged the validity of this court's thinking especially upon the inevitable unavailability to the petitioner of a remedy by way of a writ of error coram nobis and the impact upon present jurisiction of his failure to seek such relief; and prompted this court on May 29, 1946, first informally, and then by formal order, to invite written briefs, and order oral argument, upon that question. Such briefs have been filed and examined; and the argument has been had and fully considered.

It is wholly unnecessary in the present setting to review the long and perplexing record of the petitioner's efforts to obtain release from his current imprisonment. Nor would it be instructive. The ensuing discussion will mention only those recent rulings in his behalf which seem to have direct bearing upon the now narrowed issue of jurisdiction.

■ The United States District Court has such jurisdiction only as has been committed to it by statute. Accordingly, its first inquiry in a suit is usually into its own jurisdiction. All too frequently, the failure earnestly and accurately to prosecute that inquiry results in embarrassing and expensive dismissals by the Circuit Court of Appeals or even the Supreme

Court for a fatal want of jurisdiction in the court of first impression. And it is not otherwise in proceedings for writs of habeas corpus. Hawk v. Olson, 8 Cir. 130 F.2d 910; Ex parte Hawk 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572.

██ In Ex parte Hawk, supra, the Supreme Court of the United States denied an application by the present petitioner for leave to file in that court an original petition for writ of habeas corpus. It placed its denial primarily upon the ground that he had not yet shown that he had exhausted the remedies available to him in the state courts. But it went even farther and declared that in default of such a showing he was not at that time (i. e. as of January 31, 1944) entitled to relief in a federal court or by a federal judge (321 U.S. at page 116, 64 S.Ct. 448, 88 L.Ed. 572). The court thereby denied not only the then sought immediate recourse to itself, but also the existence of the procedural history prerequisite to the valid jurisdiction of this court. It reiterated that position in the following language:

"Ordinarily an application for habeas corpus by one detained under a state court judgment of conviction for crime will be entertained by a federal court only after all state remedies available, including all appellate remedies of the state courts and in this Court by appeal or writ of certiorari, have been exhausted." 321 U.S. at pages 116, 117, 64 S.Ct. at pages 450, 88 L.Ed. 572.

The high court also set out what it then conceived to be the remedies of which the petitioner might—and should—avail himself under the laws of Nebraska. It said, also on page 116 of Vol. 321 U.S., on page 449 of 64 S.Ct., 88 L.Ed. 572:

"So far as appears, petitioner's present contentions have been presented to the state courts only in an application for habeas corpus filed in the Nebraska Supreme Court, which it denied without opinion. From other opinions of that court it appears that it does not usually entertain original petitions for habeas corpus, but remits the petitioner to an application to the appropriate district court of the state, from whose decision an appeal lies to the

state Supreme Court, Williams v. Olson, 143 Neb. 115, 8 N.W.2d 830, 831; see In re White, 33 Neb. 812, 814, 815, 51 N.W. 287. From that court the cause may be brought here for review if an appropriate federal question is properly presented.

"Of this remedy in the state court petitioner has not availed himself. Moreover, Nebraska recognizes and employs the common law writ of error coram nobis which, in circumstances in which habeas corpus will not lie, may be issued by the trial court as a remedy for infringement of constitutional right of the defendant in the course of the trial, Carlsen v. State, 129 Neb. 84, 94–99, 261 N.W. 339. Until that remedy has been sought without avail we cannot say that petitioner's state remedies have been exhausted."

Omitting now a petition shortly thereafter addressed to this court, which was immediately rejected upon the authority of the language of the Supreme Court already quoted, the petitioner next sought relief by way of habeas corpus in the District Court of Lancaster County, Nebraska, within which county he is confined. Upon dismissal of his petition without the issuance of a writ, he appealed to the Supreme Court of Nebraska, which affirmed the dismissal. Hawk v. Olson, 145 Neb. 306, 16 N.W.2d 181. By certiorari, Hawk v. Olson, 324 U.S. 839, 65 S.Ct. 1021, 89 L.Ed. 1402, he obtained a review of that affirmance by the Supreme Court of the United States.

On November 13, 1945, the United States Supreme Court, still considering that, in the Nebraska courts, habeas corpus was an appropriate remedy for the redress of the petitioner's alleged wrongs, reversed the Nebraska Supreme Court's ruling and remanded the case for hearing upon its merits in Nebraska's trial court. Hawk v. Olson, 66 S.Ct. 116, 120, 90 L.Ed. ——. It did not then concern itself directly with federal jurisdiction except by way of certiorari, for it was reviewing a state court's action presumably not involving jurisdiction. But upon the sufficiency of the petition before it ultimately to require a trial of the facts in an appropriate forum and in quest of an appropriate remedy, the Supreme Court spoke with finality, saying among other

things, after recalling the averments of the petition:

"These facts, if true, we think, set out a violation of the Fourteenth Amendment. They are not conclusions of law. They are not too vague. The charge upon which the petitioner was convicted was murder in the first degree. He had *no advice of counsel prior to the calling of the jury.* His motion for continuance to examine the charge and consult counsel was made without assistance. Homicide has degrees in Nebraska. * * * There are difficulties in the application of the rules. * * * The defendant needs counsel and counsel needs time."

In due course, the mandate came to the Nebraska court; and, in reliance upon it, the petitioner demanded of the Nebraska Supreme Court a complying mandate to the District Court of Lancaster County, Nebraska, directing it to issue a writ and conduct a hearing upon the facts. But the Supreme Court of Nebraska denied the motion, and in an explanatory opinion (referring to and partially incorporating the *identically pertinent portions of another opinion concurrently filed, Jackson v. Olson, Neb., 22 N.W.2d 124),* declared by way of summary: "In full accord with our decisions we are required to hold that petitioner's issues which the Supreme Court of the United States said he is entitled to have an opportunity to prove are issues which are not justiciable in a habeas corpus proceeding." See Hawk v. Olson, Neb., 22 N.W. 2d 136, 140. The quoted reference to its earlier decisions is to be understood in association with the list of those decisions included in its opinion in Jackson v. Olson, *supra.* One may be allowed to doubt whether the Nebraska court's earlier rulings in habeas corpus cases consistently and imperatively indicate the conclusion last quoted. Stated otherwise, the inference to the contrary of the Supreme Court of the United States, in Ex parte Hawk, *supra,* and in earlier cases that need not be recalled here, and its assumption to like effect in its latest opinion entitled Hawk v. Olson, *supra,* and this court's repeatedly asserted *impressions upon the point (see sundry habeas corpus rulings in this division of the*

court) have not been wholly without warrant in the judicial history of Nebraska.

However that may be, the quoted conclusion, and the more extensive discussion in Jackson v. Olson, *supra,* are the final—more accurately the latest—deliverances upon the matter by Nebraska's highest court. And this court will not presume to disregard or question them or to deny the Nebraska court's right upon a ground of Nebraska practice to deny compliance with the mandate of the United States Supreme Court. Nor, it may be assumed, will the Supreme Court of the United States. Whatever its earlier status may have been, Nebraska's limitation upon the availability of habeas corpus has now been made manifest, and will be observed.

This court, therefore, acts upon the premise that the petitioner may not obtain the relief he seeks upon the grounds he asserts, in the Nebraska courts through a writ of habeas corpus. And, surely, he has pursued that remedy to its final extremity. It has been suggested that he might in the United States Supreme Court seek certiorari to review the Nebraska Supreme Court's denial of judgment on the former's latest mandate. But to what purpose? A newly phrased mandate upon a further review would presumably be answered in language comparable to the response to the one already delivered.

There remains the important question whether the petitioner may be absolved from his failure to seek relief by way of a writ of error coram nobis, and the jurisdiction of this court affirmed, despite his admitted failure heretofore to pursue that remedy. In Ex parte Hawk, *supra,* as has already been noted, the Supreme Court of the United States referring to that writ said positively:

"Until that *remedy has been sought* without avail we cannot say that petitioner's state remedies have been exhausted."

Perhaps, upon the filing of this case, this court should have rested with finality upon that explicit declaration, and denied the writ for want of jurisdiction. But it considered that the practical—as well as the nakedly theoretical—availability of the remedy ought to be explored. The law

professes never to require the pursuit of a vain prospect. And Ex parte Hawk, supra, itself (321 U.S. at page 118, 64 S.Ct. at page 450, 88 L.Ed. 572) grants that a federal court's jurisdiction to allow the relief now sought may exist "either because the state affords no remedy * * * or because in the particular case the remedy afforded by state law proves in practice unavailable or seriously inadequate."

Nebraska's Attorney General remaining silent upon the point in the face of the court's prompting, the court, upon its own study, was led to an impression, perhaps not attaining the status of an opinion, that, in the petitioner's plight, the ancient writ is not practicably available to him, and can hardly be more than a mirage to be pursued only to inevitable despair. Such pursuit, this court sincerely thought, ought not gravely to be enjoined upon him, as a merely formal step in his ultimate resort to this jurisdiction. Very briefly, the reasons underlying that impression will be set down.

The facts of which the petitioner principally complains and which the Supreme Court of the United States singled out in Hawk v. Olson, supra, as warranting a demand for proof, are not newly known to him. They occurred before, and in and about, his preliminary hearing before an Omaha magistrate and his trial in the District Court of Douglas County, Nebraska, in the early part of 1936, and his abortive appeal to the Supreme Court of Nebraska shortly thereafter. In their very nature, they were known to him as and when they happened, and have been so known continuously since. The history of his many prayers for his release addressed to various courts, including this one, repeatedly since 1938, and possibly earlier, is a record of his assertion of those alleged facts. It was against that realistic background that this court viewed Nebraska's employment of error coram nobis as the decisions of its Supreme Court reflect it.

In State v. Boyd, 1928, 117 Neb. 320, 220 N.W. 281, 58 A.L.R. 1283, that court, speaking through the learned District Judge Redick, reversed an order granting relief under the writ. It first declined to determine whether the writ existed in Nebraska; but declared that if it did, it "[did] not lie to bring into the record facts known to the applicant before judgment, and which he negligently or intentionally failed to bring to the attention of the court."

In 1935, that court by the late Judge L. B. Day, after an exhaustive analysis of the relevant statutory and judicial history of the state, concluded in Carlsen v. State, 129 Neb. 84, 261 N.W. 339, 346, that the writ of error coram nobis has not been expressly abolished by statute and that it exists in Nebraska under Section 49-101, C.S.Neb. 1929, Sec. 49-101, R.S.Neb.1943, dealing with the retention in Nebraska of portions of the common law "to bring into the record facts which were unknown to the defendant at the time of trial through no lack of reasonable diligence on his part." But in the case then before it, upon the declared ground that "coram nobis does not lie to bring into the record facts known to the petitioner before judgment," the court denied relief because the incidents relied upon were necessarily known to the petitioner during the progress of his initial trial. It was upon Carlsen v. State, supra, that the Supreme Court of the United States relied exclusively in Ex parte Hawk, supra, for its declaration that the writ is available in Nebraska.

On the same day when the Carlsen opinion was filed, the same court, speaking through its then Chief Justice Goss, in Newcomb v. State, 129 Neb. 69, 261 N.W. 348, 349, denied Newcomb relief under a writ of error coram nobis. He had pleaded and proved that he had been insane when, under advice of counsel, he had pleaded guilty to murder in the second degree and received a sentence to life imprisonment. But the court declared that "proceedings to obtain a writ of error coram nobis are essentially civil in character, and are governed as to time of commencement by the Nebraska Code of Civil Procedure" and that "under sections 20-2001 and 20-2008, Comp.St.1929, one seeking by writ of error coram nobis to vacate or modify a judgment against him on the ground that he was of unsound mind must begin proceedings for the writ within two years after the disability was removed." And because the evidence disclosed the petitioner's restoration to sanity

substantially more than two years before his quest of the writ he failed to obtain it.

Again in Hawk v. Olson, 145 Neb. 306, 16 N.W.2d 181, 183, the Nebraska court reiterated the general availability of the writ of error coram nobis. However, upon the authority of Carlsen v. State, supra, it also repeated the limitation of the object of the writ to the bringing "into the record, before the court that rendered the judgment (of) facts that were unknown to the defendant at the time of trial through no lack of reasonable diligence on his part, which, if known at the time of the trial, would have resulted in a different judgment."

Finally, a section of the Nebraska statutes seems to require consideration. It is Section 29-2103, R.S.Neb.1943, and in its present form it was approved one day after the filing of the opinions in Carlsen v. State, supra, and Newcomb v. State, supra. It deals with the granting of new trials in criminal cases; and, referring to a motion filed after the term at which the trial is had, and upon the ground of newly discovered evidence, contains the following language:

"In any criminal case where it shall be made to appear upon the motion of the defendant for a new trial, supported by affidavits, depositions or oral testimony, that the defendant has discovered new evidence material to his defense which he could not with reasonable diligence have discovered and produced during the term within which the verdict upon which he was sentenced was rendered, the district court may set aside such sentence and grant a new trial; *Provided, that such motion is filed within a reasonable time after the discovery of the new evidence; and provided, further, that such motion must be filed within three years after the date of such verdict, and such motion and the procedure herein provided shall be the exclusive method and procedure for reviewing criminal cases after the expiration of the term at which such verdict is rendered."* (Emphasis added)

The entire quotation just made constitutes the only amendatory language of the enactment by the regular 1935 session of the legislature; and it was added to the former section of the statute dealing generally with the time and manner of filing motions for new trial in criminal cases. It may not reasonably be argued that the amendment was prompted by the actual opinions in the Carlsen and Newcomb cases. But it will not be seriously questioned that the concurrent pendency in Nebraska's Supreme Court of those two cases, especially the highly publicized Carlsen case, occasioned the action of the legislature then in session.

Whether the foregoing statute is operative to control and limit the time within which, in Nebraska's courts, relief by writ of error coram nobis must be sought seems not to have been decided by the Supreme Court of the state. But that it was designed to do so can hardly be questioned.

The Nebraska statute just cited is brought more clearly into view because of the intimation by the Nebraska Supreme Court in its latest opinion in Hawk v. Olson, supra, to the effect that relief against matters of the nature complained of by the petitioner should have been sought through procedure to obtain a new trial.

So, this court's conclusion to allow the writ seemed at the time to be reasonably rooted in Nebraska's own discernible appraisal of its employment of the writ of error coram nobis and in a fair understanding of the purposeful action of its legislature. It seemed also to be sustained by the following observation, possibly by way of dictum, in Smith v. O'Grady, 312 U.S. 329, 331, 332, 61 S.Ct. 572, 573, 85 L.Ed. 859:

"While the opinions of the Nebraska courts do not mark clearly the exact boundaries within which Nebraska confines the historic remedy of habeas corpus, the Nebraska Supreme Court has held that the writ was properly invoked to obtain release from imprisonment resulting from deprivation of constitutional rights. (citing Newcomb v. State, 129 Neb. 69, 261 N.W. 348). Because of this, and because a contrary conclusion would apparently mean that Nebraska provides no judicial remedy whatsoever for petitioner even though he can show he is imprisoned in violation of procedural safeguards commanded by the federal Constitution, we are unable to reach the conclusion that habeas corpus is unavailable to him under Nebraska law."

The reasoning of the writer of the opinion in the quoted language, whether correct or not, can hardly be assailed for obscurity.

However, on May 20, 1946, the Supreme Court of the United States, speaking through the same justice who wrote the cited opinion in Smith v. O'Grady, supra, and without a dissent, delivered its opinion in Woods v. Neirstheimer, supra. Woods had been convicted in an Illinois state court in 1940 under an indictment for murder to which he had entered a plea of guilty. In 1945 he had addressed two separate petitions for writs of habeas corpus to different Illinois trial courts, one apparently being the court by which he was sentenced, the other having jurisdiction over the place of his confinement. The latter court denied a writ for want of jurisdiction and failure to state a cause of action. The former court dismissed upon motion for failure to state a cause of action. No right of appeal from such orders existing in Illinois, certiorari was granted by the Supreme Court of the United States to review both orders, and its allowance was placed upon a declared doubt whether the dismissals rested on an adequate state ground. In Illinois, it is held that habeas corpus is not the proper remedy for relief against a sentence violating the requirement of due process of law in the manner alleged by Woods. With no little similarity to the petitioner's allegations, Woods claimed cruelty and oppression in the extortion from him of a confession, want of counsel, the appearance for him as counsel of a public defender, the latter's refusal to consider his claimed defense or the circumstances of the confession, threats of Woods' electrocution made by the defender and the prosecutor as a means of subduing him, a plea of guilty by the defender despite Woods' consistent protestations of innocence, and his unwavering refusal to assent to a plea of guilty. Upon its examination of the cases, the Supreme Court concluded, despite inadequate explanation by the several trial courts with respect thereto, that their judgments undoubtedly rested upon the ground that in Illinois habeas corpus is not the proper remedy for the relief sought under the allegations made by Woods. Because that is an adequate state ground for judgment, it denied review and dismissed the writs.

In that case the warden contended that, by statute in Illinois, the relief which Woods sought must be obtained through a statutory substitute for the common law writ of error coram nobis. To which Woods replied that the writ was not available to him, since, by the statute creating it, recourse to it must be had within five years after the rendition of the judgment of conviction, and that period had elapsed. Reflecting upon the impact of that situation on the jurisdiction of the federal courts, the Supreme Court said [66 S.Ct. 999]:

"Nor do the denials of petitioner's applications for habeas corpus present a federal question merely because the five-year statute of limitations on the statutory substitute for the writ of error coram nobis has expired. Petitioner claims that this leaves him without any remedy in the state courts. But we do not know whether the state courts will construe the statute so as to deprive petitioner of his right to challenge a judgment rendered in violation of Constitutional guarantees where his action is brought more than five years after rendition of the judgment. Nor can we at this time pass upon the suggestion that the Illinois statute so construed would itself violate due process of law in that a denial of that remedy, together with a denial of the writ of habeas corpus, would, taken together, amount to a complete deprivation of a state remedy where Constitutional rights have been denied. We would reach that question only after a denial of the statutory substitute for the writ of error coram nobis based on the statute of limitations had been affirmed by the Supreme Court of the state."

The pertinence of that language to the present jurisdictional problem of this court is inescapable. In effect, it is an admonition against the assumption of doubtful jurisdiction and a warning that Ex parte Hawk, supra, is to be followed literally in its postponement of jurisdiction of the federal courts over the petitioner's grievances until he shall have pursued in the District Court of Douglas County, Nebras-

ka, through the Nebraska Supreme Court, and even, upon certiorari, through the Supreme Court of the United States, his quest of relief under a writ of error coram nobis and under any statutory provision for his relief which may exist.

The court here is persuaded that the plight of Woods, in the face of the explicit prescription of limitation by the law of Illinois, far more convincingly than that of Hawk in view of Nebraska's dubious remedial procedure (vide supra) pleaded for indulgence in the relaxation of the requirements for the presentation of a federal question and the opening of federal jurisdiction. Yet, the Supreme Court of the United States was firm in its insistence that Illinois declare its own position upon Wood's resort to its courts, and disclose, if it must, its procedural inadequacy for the redress of his grievance, and in its refusal to speculate upon those problems, despite the strong probabilities adversely confronting Woods. This court may not be more hospitable in the bestowal of its jurisdiction than is warranted by the admonitory counsel of the nation's highest court. To do so would be gratuitous presumption.

It has been strenuously and sincerely urged upon the court by the petitioner's counsel that what he wants and deserves is a hearing in open court upon the merits of his claim, already almost scandalously postponed. The court has not failed either to hear or to sympathize with that argument. That he has a right to be heard has been determined beyond further question, by the Supreme Court of the United States. Hawk v. Olson, supra. But his right to a hearing extends much farther than the mere presentation of evidence in some court of his choice. It is the right to be heard in a court which possesses an unassailable jurisdiction over his particular controversy, as well as over the general subject matter of his claim, and has the power to enter an effective order for his discharge from imprisonment that may be reversed only upon its merits and not upon the frustrating ground of lack of jurisdiction. This court's arbitrary assumption of a jurisdiction that now seems with certainty to have been authoritatively denied would be no generosity to the petitioner. On the contrary, it would be the cruel extension to him of a hope ineluctably predestined to dissipation. And this court is unwilling to conduct a hearing, despite the testimony in which, it must finally say, "non possumus."

An order is, therefore, entered discharging the writ of habeas corpus heretofore allowed and issued, and dismissing the petition herein, for want of jurisdiction but not upon the merits.