**SCOTT v. HENSLEE.**

Civ. No. 2382.

United States District Court
E. D. Arkansas, W. D.

March 24, 1952.

---

Thad Williams, J. R. Booker, Little Rock, Ark., for petitioner.

Ike Murry, Atty. Gen. of Arkansas, George E. Lusk, Jr., Asst. Atty. Gen. of Arkansas, for respondent.

LEMLEY, District Judge.

This cause comes on for hearing upon respondent's return to an order to show cause why a writ of habeas corpus should not issue in accordance with the prayer of petitioner's application. In said return respondent challenges our jurisdiction on the ground that petitioner has not exhausted his state remedies, and this question has been submitted on the pleadings, documentary evidence, a stipulation of counsel entered into in open court, oral argument, and written briefs. We have concluded the respondent's position is well taken, and that the proceedings should be dismissed.

This is a habeas corpus proceeding brought pursuant to 28 U.S.C.A. § 2241 et seq., whereby petitioner seeks release from the Cummins Farm Unit of the Arkansas State Penitentiary, of which the respondent is Superintendent. Petitioner is presently confined in said institution by virtue of judgments and commitments issued out of the Circuit Court of Yell County, Arkansas, after petitioner had entered pleas of guilty to two informations charging him with burglary and grand larceny. He contends that his confinement is unlawful and is in contravention of rights guaranteed to him by the 14th Amendment to the Constitution of the United States, and he alleges that he has exhausted "all possible state remedies."

Petitioner alleges that he was innocent of the crimes charged against him, but that he was arrested by the local officers and was threatened and beaten by them until he confessed; that he was held incommunicado, was moved from jail to jail, was not permitted to obtain counsel, was not informed that he had a right to counsel, either by employment or by appointment from the Court, was not permitted to see relatives or friends, and was not provided with counsel by appointment from the Court. He states further "that the atmosphere of intimidation and physical beating which followed said intimidation hovered around and over the defendant during all of the proceedings in the said Circuit Court of Yell County, Arkansas, thus resulting in the illegal commitment of the petitioner to the State Penitentiary of Arkansas". It is further alleged that petitioner has been denied rights guaranteed to him by the 14th Amendment, that he has not intelligently and competently waived said rights, and that the Circuit Court of Yell County was completely lacking in jurisdiction to commit him to the penitentiary. All of these allegations are denied by respondent, and, as stated, the latter further contends that petitioner has not exhausted his state remedies.

It is not entirely clear from the petition itself whether the gravamen of petitioner's

complaint is that he was coerced into pleading guilty or that he lacked the assistance of counsel under circumstances in which due process of law required that he be afforded such assistance. It appears from the original brief filed on behalf of the respondent that the Attorney General thought that petitioner was relying solely on duress; petitioner's reply brief, however, indicates that he is relying, at least primarily, on his lack of counsel. Since both grounds are, in a sense, alleged in the petition, we will consider that petitioner is relying upon both.

The record before us, including the stipulation of counsel, reflects that on October 8, 1951, petitioner pleaded guilty to two informations in the state court, one charging burglary and grand larceny and the other charging burglary alone; upon his pleas he received sentences totalling eight years. On November 7, 1951, less than a month after he was sentenced, petitioner filed a habeas corpus petition in the Circuit Court of Lincoln County, Arkansas, where Cummins Farm is located, which petition contained substantially the same allegations as the petition before us. The Circuit Judge of Lincoln County issued the writ and return was made thereon by respondent. On November 24, 1951, the Circuit Court of Lincoln County, after declining to hear testimony in support of the factual allegations of the petition, vacated the writ and remanded petitioner to custody; petitioner appealed to the Supreme Court of Arkansas, but on January 15, 1952, before said Court had acted, he filed a motion to dismiss his appeal without prejudice, which motion was granted on January 28, 1952. The instant petition was filed on February 4 of the current year. It has been further stipulated that petitioner has never applied to the Circuit Court of Yell County, Arkansas, the sentencing court, for the writ of error coram nobis.

Neither side controverts the proposition that before this Court may issue the writ of habeas corpus and inquire into the truth of petitioner's allegations it must appear that the latter has exhausted all available state remedies. See 28 U.S.C.A.

§ 2254. While petitioner concedes that he has never applied for a writ of error coram nobis and further concedes that he did not prosecute his habeas corpus proceedings in the state court to conclusion in the Supreme Court, he excuses his failure in these respects on the ground that neither the writ of error coram nobis nor the writ of habeas corpus, as employed in Arkansas, is broad enough to afford him the relief which he seeks. In other words, he argues that we should hold that there is an absence of state corrective process in Arkansas whereby he can challenge in the state courts the validity of the judgments complained of on the ground that they were entered in violation of his federal constitutional rights. We do not agree.

Arkansas recognizes both the writ of error coram nobis and the writ of habeas corpus; as indicated, petitioner has never applied for coram nobis, and he voluntarily abandoned his habeas corpus proceedings in the state court before the Supreme Court of Arkansas could act with respect to them. We have found no clear-cut Arkansas decisions establishing that coram nobis and habeas corpus are not adequate and appropriate remedies to be employed in attacking judgments in criminal cases which are claimed to have been rendered under circumstances amounting to a deprivation of due process of law. The most that can be said from petitioner's standpoint is that the scope of these writs in Arkansas has not been precisely defined in due process cases, and that the question of their adequacy in such cases may be open or doubtful. This is not sufficient to justify us in retaining jurisdiction. Woods v. Nierstheimer, 328 U.S. 211, 66 S.Ct. 996, 90 L.Ed. 1177; Hawk v. Jones, 8 Cir., 160 F.2d 807, affirming Hawk v. Olson, D.C.Neb., 66 F.Supp. 195; Barton v. Smith, 9 Cir., 162 F.2d 330; Hampson v. Smith, 9 Cir., 162 F.2d 334. The cases just referred to hold that, at least in the absence of controlling state decisions definitely establishing the unavailability or inadequacy of a given state remedy, a state prisoner seeking habeas corpus in the federal courts, in order to show that he has

exhausted his state remedies or that he has no adequate state remedy, must establish that he has applied to the state courts for relief by means of the remedy in question, that he has prosecuted his attempt in good faith to conclusion in those courts, including the appellate courts, and that he has been refused relief. It is not sufficient for such a petitioner to show that the question of the adequacy or availability of such remedy in the state courts is doubtful, or that if he had applied to the state courts they would possibly, or even probably, have held that the remedy sought was unavailable or inadequate. We think that these decisions are applicable here, and that the instant proceedings must be dismissed.

In Woods v. Nierstheimer, supra, it was contended by petitioner that he had no state remedy in the courts of Illinois because the time within which he was permitted to file in those courts an application for the statutory substitute for the writ of error coram nobis had expired. This contention was rejected, and it was held that it could not be said, in the absence of an authoritative ruling by the Supreme Court of Illinois, that the latter court would so construe the statute limiting the time for the filing of such an application so as to deprive petitioner of his right to challenge a judgment rendered in violation of constitutional guarantees where his action was commenced after the period of limitations had run.

Hawk v. Olson, supra, was one of the chapters in the long and complicated Hawk litigation; after exhausting the state remedy of habeas corpus Hawk filed a petition for a writ of habeas corpus in the federal District Court without applying for a writ of error coram nobis in the Nebraska state courts. He contended, as ·a justification for his omission, that said writ had been abolished in Nebraska, or that if it did exist, it did not afford him an adequate remedy to challenge the judgment under which he was confined on the ground that he had been denied the effective assistance of counsel between the time of his plea of not guilty and the time that the jury was drawn to try him, and on the further ground that perjured testimony had been knowingly used to obtain his conviction. The District Court, on the authority of Woods v. Nierstheimer, supra, held that since he had not applied to the courts of Nebraska for coram nobis, his petition must be dismissed. 66 F.Supp. 195. This decision was affirmed by the Circuit Court of Appeals. 160 F.2d 807.

Speaking of the language in the Nierstheimer case, District Judge Delehant said: "In effect, it is an admonition against the assumption of doubtful jurisdiction and a warning that Ex parte Hawk, supra [321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572], is to be followed literally in its postponement of jurisdiction of the federal courts over the petitioner's grievances until he shall have pursued in the District Court of Douglas County, Nebraska, through the Nebraska Supreme Court, and even, upon certiorari, through the Supreme Court of the United States, his quest of relief under a writ of error coram nobis and under any statutory provision for his relief which may exist." 66 F.Supp. at pages 201–202. In affirming the District Court decision the Circuit Court of Appeals said: "A federal court may not lightly conclude that a state has failed to provide its courts with jurisdiction or adequate process to set aside a conviction in which there has been a violation of federal constitutional rights. Ex parte Davis, 318 U.S. 412, 63 S.Ct. 679, 87 L.Ed. 868; Smith v. O'Grady, 312 U.S. 329, 331, 61 S.Ct. 572, 85 L.Ed. 859; Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791. And a federal court must also assume that the courts of a state, and especially its highest court, in the co-equal duty under Art. 6, cl. 2, of the Constitution to vindicate federal constitutional rights, will exercise every power possessed by them to correct a violation of such rights in a criminal conviction, if the situation fairly and justly on the circumstances calls for relief. A federal court cannot accept jurisdiction in habeas corpus on the basis of a doubt which it may have in these two matters." 160 F.2d at 810.

Barton v. Smith and Hampson v. Smith, both supra, involved petitioners who had

not applied for coram nobis to the state courts of Washington; both contended that said writ was not adequate to afford them relief. It was held, however, that petitioners were required to actually seek relief by means of that writ in said state courts, and that the unsettled state of the Washington law did not justify a retention of jurisdiction by the federal courts. In Barton v. Smith it was said:

"It is not within the province of a Federal court to predict what the holding of the State Supreme Court will be when 'the point is in actual controversy.' The mandate of the Supreme Court of the United States is that the *petitioner* by actual *attempt*—and not the Federal court, by prognostication or ratiocination—shall exhaust all state remedies before applying to a Federal tribunal for relief.

"It is not enough for the petitioner to show that possibly, arguably, or even probably, the state courts offer him no legal avenue of release from his confinement. He must demonstrate, by actual effort, that he has already invoked some 'recognized' remedy and that the courts of the state have declined to act. Coram nobis is * * * such a 'recognized' remedy in Washington; and the appellant has not invoked it." 162 F.2d at page 333. (Emphasis in opinion.)

In Hampson v. Smith the Court said: "To make a showing of having exhausted state remedies, it is not sufficient for the seeker of Federal relief to present a plausible argument that the state courts would probably not decide in his favor, anyway. He must make an actual attempt to obtain redress in the state courts, and must prosecute that attempt in good faith." 162 F.2d at page 335.

As heretofore pointed out, it is not entirely clear from the petition before us whether petitioner is attacking the judgments under which he is confined on the ground that his pleas of guilty were obtained by duress or upon the ground that he was not afforded assistance of counsel, or both. To the extent that he relies upon duress in connection with his pleas of guilty, his contention that he is without an adequate state remedy is patently without merit; in three cases the Supreme Court of Arkansas has held that coram nobis is an appropriate remedy to obtain relief from a judgment based upon a plea of guilty obtained by duress. State v. Hudspeth, 191 Ark. 963, 88 S.W.2d 858; Bass v. State, 191 Ark. 860, 88 S.W.2d 74; Howard v. State, 58 Ark. 229, 24 S.W. 8. Petitioner contends, however, that said writ is not an adequate remedy to secure relief from a judgment where the error assigned is failure of the trial court to afford counsel to the accused under circumstances in which due process requires that the accused be represented by counsel. In this connection he argues that coram nobis lies only to correct "error[s] of fact" which are not the "fault of the court";[1] and he contends that failure to provide counsel where due process requires that such be done is an "error of law" and is "the fault of the court", and, hence, not reviewable by coram nobis. But, absent an application by petitioner to the state courts for coram nobis and absent a ruling decision by the Supreme Court of Arkansas, we have no way of knowing that said Court would so hold, and we have no right to speculate upon the matter. While the Court might hold as the petitioner contends it would, it is equally possible that it might hold the other way. In this connection in Hawk v. Jones, supra, it was said: "Cases are not lacking that suggest that want of effective assistance of counsel can under some circumstances be within the scope of such a writ. See e. g. People v. Long, 346 Ill. 646, 178 N.E. 918, 920; People v. Wojdas, 309 Ill.App. 382, 33 N.E.2d 136, 137; State ex rel. Dowd v. Superior Court of La Porte County, 219 Ind. 17, 36 N.E.2d 765, 766; Irwin v. State, 220 Ind. 228, 41 N.E.2d 809, 813. We must accordingly hold, as the United States Supreme Court declared * * * that 'Until that remedy has been sought without avail [through the state courts] we cannot say that petitioner's state rem-

---

1. See Howard v. State, supra; and 24 C.J.S., Criminal Law, § 1606b(1).

edies have been exhausted.' Ex parte Hawk, supra, 321 U.S. at page 116, 64 S. Ct. 448, 88 L.Ed. 572." 160 F.2d at page 810. For us to say at the present time that the Supreme Court of Arkansas would refuse to hold that coram nobis is an adequate remedy to present to the state courts the contentions of the petitioner would be nothing more than a forecast of state law, which we should avoid. See Barton v. Smith, supra, and cf. Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971.

With respect to habeas corpus in the state courts, although the Attorney General has not argued that said writ is an appropriate remedy to be pursued by petitioner in this case, nevertheless in spite of the language of the Supreme Court of Arkansas in State ex rel. Attorney General v. Martineau, 149 Ark. 237, 232 S.W. 609, and in State ex rel. Attorney General v. Auten, 211 Ark. 703, 202 S.W.2d 763, we are not satisfied that it is unavailable or inadequate in cases like the instant one. See in this connection the fourth subdivision of Ark.Stats. § 34–1733, which provides that a prisoner may be discharged by means of habeas corpus where "the process, though in proper form, has been issued in a case, or under circumstances, not authorized by law"; and see also the comparatively recent case of Rowland v. Rogers, 199 Ark. 1041, 137 S.W.2d 246. Of course, the fact that petitioner's application for habeas corpus in the Circuit Court of Lincoln County was denied by that court is not controlling; he was obligated to appeal and to prosecute his appeal to conclusion before he could say in this court that he had exhausted his remedy of habeas corpus in the State courts. Canada v. Jones, 8 Cir., 160 F.2d 811. This he did not do, and by his action in dismissing his appeal he deprived the Supreme Court of Arkansas of any opportunity of ruling on the propriety of the action of the lower court. It is not for us to say what the Supreme Court's ruling would have been had the appeal not been dismissed.

■ In cases of this kind it is to be kept in mind that the primary responsibility for protecting rights guaranteed by the Fourteenth Amendment to persons accused of crime in the state courts, and for devising effective corrective processes where such rights have been violated, rests upon the states. Mooney v. Holohan, supra; Moore v. Dempsey, 261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543; Young v. Ragen, 337 U.S. 235, 69 S.Ct. 1073, 93 L.Ed. 1333.

■■ As stated, it is not to be presumed that the state courts will be derelict in their duty to give full effect to federal constitutional rights. Wade v. Mayo, 334 U.S. 672, 679, 68 S.Ct. 1270, 92 L.Ed. 1647; Hawk v. Jones, supra. There is nothing in the history of the Supreme Court of Arkansas to indicate that it is indifferent to procedural due process or that it will turn a deaf ear to substantial pleas that constitutional rights have been violated.

Let the order to show cause be vacated and the writ be denied.